RICHARD P. HART *vs.* GEORGE A. GAGE.

A Field Book, accompanied with testimony, showing that it had been long recognized and acquiesced in by the proprietors as a division in fact, is evidence in support of title, in lieu of one made strictly according to the statute.

The records of the proprietor's clerk, of deeds made and recorded previous to the act of February 26th, 1783, authorizing said clerks to record deeds, are not admissible evidence of titles to lands described in said deeds.

This was an action of ejectment for Lot No. 27 in 3d division of lands in Addison, drawn to the original right of Sylvanus Tinker. Plea, general issue, joined to the country.

The plaintiff, to support the issue on his part, offered in evidence the proprietor's records of said Addison, and read therefrom the record of a deed executed by said Sylvanus Tinker and others, to Alexander Stewart, on the 28th of September, 1763, and recorded the 15th of August, 1775; and also read therefrom the record of another deed executed by said Stewart to one John Barns, dated 27th April, 1781, and recorded September, 1781; both of which deeds purported to convey the land in question. The above deeds were not recorded in the town clerk's office.

The defendant objected to said proprietor's records being read to the jury, as evidence of the existence, and record of said deeds. The court, however, admitted them.

The plaintiff also offered in evidence the *Field Book*, so called, of the third division of land in said Addison, containing a description of the several lots in said third division, in connexion with parol evidence to show that said *Field Book*, from its date, has been recognized and treated as the *Field Book* of said third division of lands by the proprietors generally, of said township. The defendant objected also to this evidence; but the court admitted it.

The defendant took his exceptions to both decisions of the court, which were allowed and certified by the judge.

*Philip C. Tucker for defendant.*—In this case, two points are made by the defendant.

First: That by the statute it is necessary that the records of all deeds should be made upon the book of records of the town in which the land described therein lies, and that deeds not thus recorded are insufficient to pass title to

ADDISON,
January,
1834.

Hart
vs.
Gage.

lands, except as against the grantor or grantors and their heirs only.—Stat. Chap. 18, Sec. 3, p. 167.

Second : That the mere acquiescence of the proprietors in the descriptions contained in an alleged *Field Book*, supported by parol testimony, without a showing of any legal meeting, at which a division of lands was made by said proprietors, or of any warning containing the subject matter to be acted upon at such meeting, is not, in itself, sufficient to establish such division of lands, or of any title claimed under the same ; but that, by the statute, no business can be done affecting the interests of proprietors of common and undivided lands, in any other manner than by legal warning of a meeting, describing the business to be performed, and the time when and the place where it is to be attended to ; and consequently, that the admission of a *Field Book*, as a substitute for said legal acts, was error, and against the laws of this state.—Rev. Stat. 1824, Chap. 100, Sec. 1, p. 670.

*Woodbridge & Son for plaintiff.*—The case presents only two points : the first is, whether the proprietors' clerk of the town of Addison, in the years 1775 and 1781, was a recording officer for deeds of land in said town, the same not having been at either of those times duly organized.— The second is, whether the *Field Book*, so called, of the 3d division of lands in Addison, containing a description of the several lots in said 3d division, accompanied with parol testimony to show that said *Field Book* had been at all times recognized and treated as the *Field Book* of said 3d division of lands by the proprietors generally, and that they all held their lands under said division, ought to have been permitted to go to the jury as evidence tending to show said 3d division in fact to have taken place.

As to the first point above, the plaintiff contends there was no error in the decision of the county court, as it does not appear by the exceptions that either in the years 1775 or 1781 the said town of Addison was organized as a town, and in fact no such organization had at either of those times so taken place, and no town clerk was appointed for said town, and by an act of the legislature of this state, passed February 26, 1783, entitled "an act to authorize proprietors' clerks to record deeds," it is enacted "that in towns not

Addison,
January,
1834.

Hart
vs.
Gage.

organized and not having town clerks in said towns, That any proprietor's clerks that have been or might thereafter be elected and duly qualified in said office of proprietor's clerk, are hereby declared legal officers for receiving and recording deeds of lands lying in such town," (see Vt. Stat. Edition of 1808, vol. 1, p. 426.) And the plaintiff will further contend, that by a uniform course of decisions in this state, since the passing of said act, that deeds recorded in the manner set forth in the bill of exceptions in this case, have been permitted to be read to the jury as evidence of title.

As to the second point, the plaintiff contends there was no error in the decision of said county court, in admitting said *Field Book*, supported by parol testimony, to be read to the jury as evidence of a third division in said town. It is a matter of no importance, in fact, whether the division was strictly legal or not. A division being acquiesced in by the proprietors, and under which each proprietor claims and holds his lot, is a good division, although all the forms of law have not been pursued. At all events, a stranger cannot call such a division in question; and such the plaintiff believes to have been also the uniform course of decisions in this state.

The opinion of the court was pronounced by

MATTOCKS, J.—It has been so often and so long settled in this state, that a division in fact made and acquiesced in, may be shown in lieu of one wholly according to the statute, that the propriety of such a course is not now to be drawn in question. Such tremendous consequences would follow from holding otherwise, by throwing, in many instances, a considerable part of cultivated townships into common again, that it cannot be permitted. And a *Field Book*, accompanied with testimony showing that it had been recognized as such, was pregnant evidence of the two necessary facts, survey in fact, and an acquiescence under it. And these books, and the maps made from them, as they ripen by time, and monuments perish, may, like Doomsday Book, be the best, if not the *only* evidence of many ancient surveys. The plaintiff also offered the proprietors records of Addison, and was permitted to read in evidence, although objected to by defendant, the re-

cord of three deeds to make out his title, dated in 1763, 1775, and 1781, and all recorded by the proprietor's clerk before the year 1783.   It is obvious that these papers were not admissible as original deeds—they did not purport to be such.   The loss of the originals was not proved in order to let in secondary evidence, nor were these sworn or proved copies.   The only question then is, whether they were records.   And this depends on the act cited of February, 1783, entitled, " An act to authorize proprietors' clerks to record deeds," which declares, " That any proprietor's clerks that have been, or may hereafter be, elected and duly qualified in the said office of proprietor's clerk, are hereby declared legal officers for receiving and recording deeds of land lying in such town."

Now this act, like most acts, was prospective, and not like some, retrospective ; and these deeds were not recorded after the passing of the act, but before, when the proprietor's clerk had no authority to record deeds.   The act does not purport to make deeds already recorded valid, which is strong evidence that the General Assembly had no such intention ; for at that day they never dreamed that they had not as good a right to look back as forward in their enactments : and as no copying a private paper into a book can make the copy a record, unless the law gives such authority to the recorder, and as the proprietor's clerk had no such authority, when he made what was offered and admitted as a record, there was error in the county court in admitting the copies of these deeds ; and therefore,

The judgment of the county court is reversed.