WASHINGTON,
*March,*
1842.

Spear
*v.*
Ralph.

ARAUNAH SPEAR *v.* AMOS RALPH.

Where one has claims of title to land by deed or other writing, and from time to time continues to enter upon the same, and to do acts, which, in connection with his avowed object, at the time of doing them, evince an intention to use the land as his own, this will be construed a possession of the land in such person, to the extent of his written claim of title.

If such acts be done by one who has contracted to purchase the land, and has entered upon it, by consent of the person holding a written claim of title, then they constitute a possession in the vendor.

Cutting a road upon land with a view to get timber, or to fell trees in order to clear and cultivate land, constitutes, in connection with a written claim of title, a constructive possession to the whole tract described.

EJECTMENT, to recover the seizin and possession of lot No. 62, in the second division of lands in Warren.

Plea, not guilty. Issue to the country.

On the trial in the county court, the plaintiff gave in evidence a deed to himself of the lot in question, with certain other lots, in Warren, from one Daniel Spencer, dated July 18, 1836, and recorded August 6, 1836. The plaintiff further introduced testimony tending to show that in July or August, of the same year, he commenced a chopping on the lot, which he burned and cleared off in the season of 1837, and sowed in 1838. The possession of the defendant at the commencement of this suit being admitted, the plaintiff rested his case.

The defendant then gave in evidence a deed to himself from Smith, Booth & Ufford, dated June 10, 1836, and recorded September 26, 1836. Also, a record of the levy of an execution in favor of Smith, Booth & Ufford, against one Peabody, made May 5, 1834. Also a deed from J. J. Rosevelt, dated March 8, 1831, to said Peabody, and a deed from one James Savage to said Rosevelt, dated December 7, 1795. These deeds and levy all covered the lot in question. The defendant then called O. H. Smith as a witness, who testified that he was the attorney of Smith, Booth & Ufford, in the suit against Peabody; that, after the levy, and in February, 1836, the defendant applied to him to purchase the lot, and he informed the defendant that he might have it for $200, and he would write to Smith, Booth & Ufford and pro-

cure a deed, and that he might, if he chose, go into the im-
mediate possession of the land; that the defendant agreed
to pay the price, and that, in the course of the summer of
1836, a deed to the defendant was sent to the witness by
Smith, Booth & Ufford, which he delivered to the defen-
dant and received the amount of the purchase money from
him ; but at what time the deed was delivered he could not
state. The defendant further introduced testimony, tending to
prove that sometime in June, 1836, he employed sundry in-
dividuals to go on to the lot, with directions to cut out a
road upon it to a part of the lot which he wished to clear,
and where he wished to get timber, saying, at the same time,
that he had made a contract to purchase the lot and had a
right, by the agreement, to take possession; that these in-
dividuals, during the same month, went on to the lot, under
this employment, and cut out the road.   It appeared that
there was at that time, and had been for some years pre-
viously, a road cut out across the lot for the accommodation
of some few inhabitants living west of the lot, which was
occasionally travelled by those going to and from another
settlement in the town ; that the individuals so employed
by the defendant, worked upon this same road, which ran
near that part of the lot defendant wished to clear, in many
places straightening it and making it more perfect, and so
far deviating from the old road as to render it mainly a new
one.   The plaintiff gave testimony tending to show that the
work was a mere mending of the old road.  It also appeared, on
trial, that in making said road by defendant, one Moore work-
ed five days, Daniel Ralph three days, and one Stetson two
and one half days, and that the defendant had, before this
time, hired Moore to cut ten acres of trees that season on
the lot, which were cut, in fact, in June, 1837, and that the
defendant had no other possession of the lot, nor did any
acts upon it until June, 1837, as above stated.

Upon this testimony, the plaintiff insisted, and request-
ed the court to charge the jury, that these acts of the
defendant constituted no defence, nor such a possession
as affected the right of the plaintiff.   But the court refused
so to charge, but did, among other things, instruct the jury
that if the work, done by the defendant's servants, was done
for the purpose of getting timber, and reaching the point in

Margin note:

WASHINGTON,
March,
1842.

Spear
v.
Ralph.

Washington,
March,
1842.

Spear
v.
Ralph.

the lot where he wished to begin clearing a field, and the road was so far made new as to indicate to those who might notice it that it was done with a view to the enjoyment of the use of the land, and not to improve the road for the use of those who had formerly travelled it, it would, with the defendant's deed, if that had been delivered, amount to a possession of the lot in him, and if the deed had not been delivered, it would amount to a possession in his grantors, if they believed the facts attempted to be shown by the defendant in relation to his contract with them ; but any improvement of the road, or making of a road short of that would not amount to a possession. .     , .

The jury returned a verdict for the defendant, and the plaintiff excepted to the charge of the county court.

*L. B. Peck*, for plaintiff.

The cutting out of the road, under the circumstaces of this case, was not such a possession of the lot as defeated the plaintiff's subsequent possession and occupancy under his deed.   The act was of too equivocal a character to give it this effect.   Where an individual who has a deed of a lot on record, from time to time, and from year to year, enters upon it and takes off timber and wood, the public would readily believe, and have good reason to believe, that he claims to own the land and does those acts as owner.   But such an inference would not be ordinarily drawn from the act of cutting out a road.   It would generally be regarded as an act done for the benefit of the public rather than of an individual.   If the purchaser of a wild lot would take possession to avail him against a subsequent entry by a third person, it must be by some open and notorious act which asserts to the world a claim of right.

Digging a canal and felling trees are not such acts of possession, as may be the basis of a prescription of thirty years. *Macarty* v. *Foucher*, 12 Martin's R. 11.   Appendix to Adams on Ejectment, 493.   So the tapping or cutting sugar trees for the purpose of making sugar, and so using them, and the land, is not evidence of an adverse possession. *Ellicott* v. *Pearle*, 10 Peters' R. 430.   If the rule laid down in *Ewing* v. *Barnett*, 11 Pet. 53, is to govern the case at bar, the defendant's acts fall far short of bringing him within the

rule. *Doolittle* v. *Linsley*, 2 Aik. 155, is the leading case, in this state, on this subject ; and so far is that decision from aiding the defendant, that the reasoning of the court is at war with the position now assumed by him. There is a broad and clear distinction between the cases. In that case the plaintiff's claim of title was of record, and there was proved a succession of acts clearly indicating an assertion of property. This case was followed by that of *Sawyer* v. *Newland*, 9 Vt. R. 383, which is the same in principle. In these cases, as well as in all others bearing on the question, much stress is laid on the fact that the entry upon the land was under a claim of title which appeared of record. No such circumstance marks the case under discussion. The defendant, it is true, claimed to have purchased the lot of Smith, Booth & Ufford, but when the labor was done on the road, his deed had not been delivered, nor was it recorded until some months subsequently. There was nothing, then, on the record tending to show that the defendant asserted any claim to the lot. It seems to be well settled in this state that no entry or act will amount to a possession of a lot, unless it is of that character which would authorize the owner to sustain ejectment. The act of cutting out the road would not have supported ejectment in the name of the owner. ' What amounts to a possession is a question of law. 5 Peters, 438.

*O. H. Smith* and *W. Upham*, for defendant.

We contend that there was testimony for the jury to weigh, and that the charge of the court was correct. The acts of the defendant, done upon the land, were in fact done under a public claim of title, and for the purpose of the enjoyment of the use of the premises by the defendant, and the jury have found the fact that the acts done were of a character to indicate to the public that intention, and not for the purpose of improving an old road ; and we contend that the case was properly submitted to the jury. *Doolittle* v. *Linsley*, 2 Aik. 155. *Cutteris* v. *Cowper*, 4 Taunt. 547.

It is a well settled principle that, in ejectment, the plaintiff must recover upon the strength of his own title, and not upon the weakness of the defendant's, and, also, that prior

WASHINGTON,
*March*,
1842.

Spear
v.
Ralph.

WASHINGTON, possession, under color of title, is good against all but the March, rightful owner.
1842.

Spear          Acts of trespass, by one claiming title, may be considered
v.      as acts of possession.  The claim of title gives character to
Ralph.   the act.  This doctrine may be considered as well settled in
this state.  *Sawyer* v. *Newland*, 9 Vt. R. 383.  *Chilson et al.* v. *Buttolph*, 12 Vt. R. 231.

The opinion of the court was delivered by

REDFIELD, J.—From the cases which have been decided in this state, in regard to what acts are necessary to constitute a possession of land, where the person in whose name and ,on whose behalf they are done, has a claim of title to the land by deed, it is obvious that the case now under consideration was properly submitted to the jury. · The latest case upon the point in discussion, *Chilson* v. *Buttolph*, 12 Vt. R. 231, recognizes the principle that any act done upon land by one having a deed of it, which will bear the construction of an act of ownership fairly, although equally an act of trespass in a mere stranger, shall be considered an act of ownership, and does constitute a possession, or an eviction of the true owner, who is seized merely by virtue of his title. This is but giving effect to the principle already decided in the cases of *Doolittle* v. *Linsley*, 2 Aik. 155, and of *Sawyer* v. *Newland*, 9 Vt. R. 383.  It is plain, I apprehend, that the cutting a road across land is not necessarily an act of ownership, for it may be done with a view to accommodate the public travel, in that direction, or to enjoy other land beyond the lot in question, or it *might* be done of mere wantonness, and in either case it would be merely a trespass. But when a road is cut, leading to some particular portion of the lot, with the apparent and the avowed purpose of clearing land and getting timber, in connection with the paper title, it could hardly be considered less than an act of ownership and a possession.  If done while the defendant's grantors held the title, (whatever it is,) it would, if done by their consent, or under a contract to purchase the land, constitute a possession in them ; for, until the actual conveyance, the vendee of land stands in the relation of tenant, or *quasi* tenant, to the vendor.

It is, no doubt, true that what constitutes possession is a

question of law ; but where there is any controversy as to the acts done, and with what actual or avowed intent they were done, it always becomes necessary to submit the whole case to the jury, giving them definite instructions upon all those points wherein the controversy arises.    This was done in the present case.    We do not perceive any just ground of objection to the rule laid down by the county court.

Judgment affirmed.