CLARK SPAULDING v. BENJAMIN WARREN.

*Ejectment. Reference—the effect upon pleadings and issue.*
*Adverse possession.*

Upon a reference, the suit is to be tried without strict regard to the pleadings in the case, or the issue formed upon the record; and in an action of *ejectment*, a variance between the description of the premises in the *declaration* and the *proof* is avoided by the reference of the case.

Though, as a general rule, " an admission by a party, of a mistaken line for the true one, has no legal effect upon his title," still a mutual recognition of a given line by adjoining proprietors, accompanied by actual possession of one or both for the period of fifteen years, will be conclusive as to their respective rights.

When one enters upon a tract of land, under a deed giving definite and certain boundaries to the premises, the possession of any part will be considered as a possession of the whole; nor for this purpose is it essential that the deed under which he enters be recorded.

EJECTMENT, for lands in Cavendish. The case was referred to referees, who reported the following facts:

That the premises described in the plaintiff's declaration are the southerly half of a piece of land, an undivided half of which was deeded by Asa Wheeler to the plaintiff, and one Isaac Spaulding, by deed dated August 17, 1815, and recorded in Cavendish Land Records, on the same day; and an undivided fourth part was deeded by the said Isaac Spaulding to the plaintiff, by deed dated October 14, 1816, and recorded in Cavendish Land Records, May 10, 1822. That prior to 1816, a small part of the land described in the plaintiff's declaration had been cleared, and ever since that time the plaintiff has been in the possession and occupancy of that portion of the land cleared as aforesaid; and some fifteen years ago, the plaintiff having for three years been taking the wood from another portion thereof, lying westerly of the land before cleared, and northerly of defendant's land, cleared and raised grain on the westerly end, and from that time occupied the same ,either as mowing or pasturing up to 1845.

That no division by deed was ever made of the lot of land, of which the plaintiff owned an undivided half; but by consent of the parties, plaintiff occupied that portion described in his declara-

tion, from the year 1816 to 1845, so far as he could possess it by occupying the cleared land, and cutting and carrying timber and wood from the same, from year to year, and making sugar thereon, which acts he did nearly or quite every year during the time.

That for more than forty years, and probably more than sixty years, there has been a line generally known and recognized as the line between Cavendish and Ludlow, which is the western boundary of the land claimed by the plaintiff, and until within the last five years, so far as the land owners southerly of the plaintiff's land in Ludlow and Cavendish have cleared, occupied, or fenced their lands, they have done so conformably to said line.

The surveys of land in Cavendish appear to have been made to that line, and it does not appear that the survey of any lot of land in Ludlow has ever been made across it.

This line appears to have been made in consequence of local attractions affecting the magnetic needle, and from the north-westerly corner of the land claimed by the plaintiff to the present recognized south-westerly corner of Cavendish, is several rods westerly of a straight line from the north-east to the south-east corners of Ludlow, as said corners were originally established.

The charter line between Ludlow and Cavendish was a straight line; but the oldest inhabitants now living have generally understood from an early day that the line as usually recognized was a crooked line.

At some time, probably more than sixty years ago, a straight line was run and marked between the towns; but there was no evidence that said line has ever been recognized, either by the land owners, or either of the said towns, or that it had ever been traced or seen, by any person now living, till within two or three years last past.

The defendant is the owner of a piece of land in Ludlow, adjoining the plaintiff's land, and bounded on the east by Cavendish line, and has been in possession of said land, as far easterly as to the line claimed by the plaintiff as his west line, ever since March, 1837.

In the year 1845, a straight line between Cavendish and Ludlow, from the recognized south-west corner of Cavendish, was run by one Warren Skinner, and it was found to cross the land claimed by the plaintiff some sixteen rods easterly from what had, up to

that time, been recognized as the line, and the defendant thereupon claimed that his land extended easterly to said line, called the Skinner line. That portion of the land claimed by the plaintiff, lying westerly of the Skinner line, and southerly of the defendant's north line, was wood and timber land, and has been used by the plaintiff for the purpose of occasionally obtaining wood and timber, and for sugaring, from the year 1816, but no part of it had been cleared or fenced. In 1845, the defendant took possession to the Skinner line, cut off the timber from three or four acres, and fenced the lands.

The north-east corner of Ludlow is some three or four miles northerly of the land in dispute, and from said corner the line is supposed to run southerly two or three miles straight, and in the direction of the south-east corner of Ludlow; this line has always been acquiesced in by all concerned. The farm immediately north of the land in dispute, lies in both Cavendish and Ludlow, and no line across it, between the towns, has been kept up.

The line between the lands of the plaintiff and defendant, to which the plaintiff claims, and the line extending southerly therefrom, is westerly of a straight line between the corners of said towns, and has been acquiesced in as the line until 1845, by the claim and occupancy, as far as circumstances required, by those claiming to own the land on the Cavendish side, and by the absence of any claim or occupancy east of that line, by those on the Ludlow side of the line until 1845. This line is neither a straight line, or a curve line, but is irregular, in some places running in one direction, and in other places running in variant directions.

There was no other proof of the acquiescence of the defendant in this line, than that he did not exercise any act of ownership over it, or claim to the land east of it, until the Skinner line was run, and had recognized the line to which the plaintiff claims, as the true line.

The parties regarded the *town line* as the line between their lands, and the plaintiff had no deed or other title recorded in Ludlow.

The defendant objected that said report did not entitle the plaintiff to recover; but the County Court, March Term, 1852,—COLLAMER, J., presiding,—overruled the objection, and rendered judgment for the plaintiff to recover the lands, with damage and costs, to which the defendants excepts.

Spaulding *v.* Warren.

*S. Fullam and J. F. Deane,* for defendant.

I. The plaintiff cannot sustain this action. He has no title to the land in controversy ; he is only a joint owner with others, and in ejectment all must join. In trespass, his possession coupled with part ownership might do ; but in ejectment a different rule attaches. The plaintiff's occupying the land "by consent of the parties" does not give him title to the premises.

II. The lands sued for are described as being in Cavendish ; but the report of the referees shows the lands to be in Ludlow. Therefore the plaintiff cannot recover in this action. *Hooker* v. *Hicock,* 2 Aiken, 172.

III. The plaintiff has no title to the lands in controversy, and if he holds them, it must be by his possession. There is nothing in the report which shows any such possession as would give a title.

When the corners are not in controversy, there must be unequivocal evidence of an acquiescence in a zig-zag line between them, to establish it as the true line. In this case, the defendant claims to a straight line between the corners. The acquiescence of the defendant and those under whom he claims, for a period of fifteen years, is necessary to establish the line. There is no pretence of acquiescence by those under whom the defendant claims, and his acquiescence does not vary the case, for he bought the lands in 1837, and took possession of the lands in controversy in 1845. *Crowell* v. *Bebee,* 10 Vt. 33.

The plaintiff taking and recording a deed in one town would not give him a constructive possession in another, even if he does take possession of a part of the lands in the town where the deed is placed on record. The plaintiff does not show a charter title to the lands which his deed covers ; he must therefore rely upon his possession, and this we insist is wholly insufficient. The land was in a wild state, neither cleared nor fenced, and he occasionally got wood and timber from it from 1816 to 1845. This would not have estopped him from disclaiming title, had ejectment been brought against him.

The equity of the case is manifestly with the defendant, and there can be no dispute but what the defendant honestly owns the land, and the plaintiff is attempting dishonestly to wrest it from him. Therefore the court should not "*strain a point,*" or make a presumption in favor of the plaintiff.

*Washburn and Marsh*, for plaintiff.

That the land is described in the declaration, as situated in Cavendish, cannot affect the validity of the decision of the referees.

1. It may well be doubted, whether even the towns, after an acquiescence for the length of time stated in the report, in the line as located, are not now estopped from denying that it is the true line.

2. All that is required in the declaration is, that the sheriff, from the description there given, can determine its location, for the purpose of delivering seizin. In this case the land is described with precision, by metes and bounds ; and the allegation, that it is within a certain town, may be treated as *surplusage*. The averment that it is within the county of Windsor, is sufficient to give the County Court jurisdiction. The *gist* of the issue is, whether the plaintiff owns the land within the metes and bounds named by him ; and this is all that referees are bound to regard. And this point they determine, by deciding that he has been in adverse, exclusive and undisputed possession of the land, as described, for a period exceeding fifteen years.

3. That the plaintiff's deed never was recorded in Ludlow, does not affect his right of recovery. *Possession*, for the statute period, gives as perfect a title as a title of record can be, and, by its notoriety, supersedes the necessity of a record of the deed under which it is taken, since the only object of such record is notice.

4. And this defendant cannot, in any event, object to the plaintiff's deed for want of record ; for he does not claim title under the plaintiff's grantor.

The opinion of the court was delivered by

ISHAM, J. The question, in relation to a variance between the description of the premises in the declaration and the proof, is avoided by the reference of this case, and the report of the referees thereon. On a reference, the suit is to be tried without strict regard to the pleadings in the case, or the issue formed upon the record. In the case of *Eddy* v. *Sprague*, 10 Vt. 218, it was held, that on a trial before referees, "the declaration is important "only to determine the extent of the submission, and that the refer- "ence is of the whole case to be tried on its merits, and not of the "particular issue joined in court." When, therefore, the extent

of the submission and the subject matter in controversy are ascertained, the referees are to proceed to a hearing of the case on its merits, as if no formal declaration or pleadings had been filed.— And this mode of trial is not altered by the statement in the report, that the referees *intended to decide according to law*—for, it is only those questions of law affecting the merits of the case, and the effect of which is to dispose of the matter in controversy, that the court will reconsider, on the application for a judgment on the report.   This is the doctrine of the case to which we have referred, and was again so held in *Davis* v. *Campbell*, 23 Vt. 238.

To entitle the plaintiff to recover in this case, it must appear from the report, that he has a legal right to the premises for which the action is brought, and also the right of possession at the time of the commencement of the suit.   This right or title may be proved, not only by deeds and regular conveyances, but a possessory right is sufficient against a wrong done, or one who has no better title; and when such possession has been continued for fifteen years, without interruption, the title has become perfected under the statute, and the party may maintain ejectment against any one who obtains and withholds from him the possession of the premises.

We learn from the report, that the premises in controversy are the southerly half of a piece of land, the undivided half of which was conveyed to the plaintiff and one Isaac Spaulding, by Asa Wheeler, on the 17th of August, 1815; and that the interest of Isaac Spaulding was conveyed to the plaintiff in 1816, thus vesting the title in the premises in Asa Wheeler and the plaintiff, as tenants in common.   The report also shows, that a division in part of these premises was made by Wheeler and this plaintiff, and that each have occupied in severality since the year 1816.   This division is good as against the defendant; he being a stranger to their title, and not claiming under them, will not be permitted to dispute the same.   Under this division, the plaintiff has been in the undisturbed possession of these premises from 1816 to 1845, claiming title to the same under his deeds.   A small part of the land was cleared in 1816, and has ever since been occupied by him; and some 15 years ago, another portion of the same premises was cleared, and has since been occupied for meadow and pasture.   The referees also state, in relation to the whole tract de-

scribed in the deed, that the plaintiff has been in the undisturbed possession of these premises from 1816 to 1845, about 29 years, so far as he could possess it by occupying the cleared land, and nearly or quite every year making sugar therefrom, and cutting and carrying off wood from the premises. A portion of these premises, lying westerly of the Skinner line, and southerly of the defendant's north line, consisting of wood and timber land, has never been cleared or fenced. While the principle is correct, that an entry upon uncultivated land, without color of title, and occasional acts of cutting timber, may not be sufficient to establish a title to the premises, when not enclosed, and no visible boundaries exist, (*Doolittle* v. *Linsley*, 2 Aik. 155,) yet it is well settled, that if one enters upon a tract of land, under a deed giving definite and certain boundaries to the premises, the possession of any part will be considered as a possession of the whole, and as co-extensive with the claim of title; and such possession will preclude the occupant from the benefit of a disclaimer in an action of ejectment. Nor, for this purpose, is it essential that the deed under which he entered be recorded, for it has been held, " that a deed " defectively executed may be admitted as evidence of the partys' " possession who entered under it." *Beach* v. *Sutton*, 5 Vt. 213. It therefore becomes immaterial whether the land for which this suit is brought, lies wholly in Cavendish, or partly in Cavendish and Ludlow. The plaintiff's entry, under his deed, gave him a possession co-extensive with its boundaries, and after the lapse of 15 years, perfected his title to the whole tract included in the deed.

We learn from the report, that the defendant was the owner of a tract of land in Ludlow, adjoining the plaintiff's land, and which, by his deed, is bounded on the east by the line of Cavendish. If the defendant, and those under whom he claims, had at any time a title to these premises, the question still arises, has the defendant lost that title, and has it been acquired by the plaintiff? The defendant became the purchaser of his land in 1837, and under that title has claimed possession to the crooked line as marked on the plan, which was deemed the line of Cavendish, and which also is the same line to which the claim and possession of the plaintiff extended. This was the extent of the defendant's claim and possession from 1837 to 1845, and during that period no claim of title or right of possession was made to any portion of the premises then

occupied by the plaintiff. This must, therefore, be regarded as a mutual acquiescence on the part of each, to that, as the true line of occupancy and possession between them. It appears from the case also, that there was a like acquiescence in this line, as the boundary of possession, by those under whom the defendant claims, and who were the former occupiers of the lot; for the referees state, that while the plaintiff was in the possession of the premises, under his *deed, to that line*, from 1816 to 1845, the owners of the adjoining lot claimed by the defendant, during that whole period, made no claim of title to any part of the plaintiff's possessions, or questioned his right thereto. It is difficult to conceive of a case where a title by possession under the statute can be created, if this long possession to a given line, and mutually recognized as such, will not bring this case within its provisions.

It is, however, insisted by the defendant, that his title to the land demanded has not been lost by this possession of the plaintiff, as that possession was continued under a misapprehension of the true line between the towns of Cavendish and Ludlow; and that his claim to the premises was made immediately after running the Skinner line in 1845. As a general rule, "an admission by a party, of a mistaken line for the true one, has no legal effect upon his title;" but a mutual recognition of a given line, by adjoining proprietors, accompanied by actual possession of one or both for the period of 15 years, will be conclusive as to their respective rights. This doctrine was recognized in *Crowell* v. *Bebee*, 10 Vt. 35, and directly ruled in the very elaborate case of *French* v. *Pierce*, 8 Conn. 440, in which it was observed, "that where the " owner of land bordering on the land of another, through a mere "misapprehension of the place of the dividing line, occupied and " possessed as his own, a portion of land beyond that line, for more "than 15 years, it was an adverse possession, sufficient to estab- "lish a title in the possessor." The possession of these premises by the plaintiff, under his deed, from 1816 to 1845, must be considered as having perfected his title under the statute; and the entry of the defendant in 1845, and dispossessing the plaintiff from a portion of the same, was an injury for which this action can be sustained.

This view of the case renders it unnecesary to decide, which of these lines, as marked on the plan, is the true line between Caven-

dish and Ludlow. The crooked line, by acquiescence of the adjoining owners of land, has become the true line, so far as to settle the title and rights of such adjoining owners; but their acquiescence and recognition of a town line, can have no effect, in determining the jurisdictional line of the respective towns.

The judgment of the County Court is affirmed.