## DANIEL PUTNAM vs. CHARLES D. BOND.

In an action of trespass, between proprietors of lands in the adjoining towns of Shirley and Lunenburg, whose deeds bounded on " Shirley line " and " Lunenburg line " respectively, there was evidence tending to show that when the deeds were made the legal line between the towns (which was afterwards fixed by the legislature by a declaratory act) differed from what it was universally reputed to be. *Held,* 1. that such evidence disclosed a latent ambiguity which parol evidence was admissible to explain; 2. that, although the presumption on the face of the deeds was, that they conveyed to the legal line, yet if a different line was shown to exist, considered universally at the time of the making of the deeds to be the Shirley and Lunenburg line, that would be the boundary referred to in the deeds; 3. that perambulations of the boundaries of the towns by the selectmen in the execution of their legal duty were competent, but not conclusive, evidence of the line intended by the parties; and 4. that the determination of their actual intention was for the jury upon a consideration of all the circumstances.

TORT for trespassing on land in Shirley, along the line be-tween that town and Lunenburg, as established by the St. of 1848, *c.* 194. The answer denied the trespass, and set up title in the defendant's wife.

At the trial in the superior court, before *Morton,* J., the plain-tiff introduced a deed from Richard Francis to Simon Francis in 1795 of a lot of land described as in Lunenburg, with the eastern boundary " to a stake and stones at Shirley line, thence northwardly on said line to land belonging to Jonathan Gowen ; " also several deeds from Simon Francis's heirs to the plaintiff, one in 1837, in which the eastern boundary was described as " by or near Shirley line," and the others in 1846 and 1848, in which it was described as " to a stake and stones, thence N. $16\frac{2}{3}°$ E. fifty-four rods and ten links on Shirley old line to a stake and stones ; " the courses and distances mentioned in all which would include the place of the alleged trespass ; and he further introduced evidence tending to show that the monuments therein mentioned were standing at the corners of the land he claimed ; that between 1830 and 1848 the line to which he claimed was perambulated as the town line between Shirley and Lunenburg, and was recognized as the line by the inhabi tants of the respective towns ; that the line established by the St. of 1846, *c.* 74, repealed by the St. of 1848, *c.* 194, was a line

midway between the line to which he claimed and the line of 1848, which last line was the furthest to the east; and that long before 1830 there were certain bounds on the line to which he claimed, and none either on the line of 1846 or on that of 1848; but there was no evidence whether these were private or town bounds.

The defendant relied on a deed, made in 1832, and recorded in 1835, from Thomas Whitney to Dennis Page (of whom the defendant's wife was the daughter and held the title) of a piece of land, described as in Shirley, and as bounded towards the west " to Lunenburg line, thence northerly on Lunenburg line to a stake and stones, thence easterly," &c. ; offered evidence tending to show that the line established by the legislature in 1848 was the true original record line between the two towns; and requested the judge to instruct the jury that " the deed to Dennis Page conveyed him to the true line between Lunenburg and Shirley, wherever that line was, and it would make no difference that another line was at the date of his deed or subsequently reputed to be the true line; and so the deed of Richard Francis to Simon Francis in 1795 conveyed up to the true Shirley line, wherever that line was, and it is immaterial that another line was then or subsequently reputed to be the true line."

The judge declined to give these instructions; but instructed them " that if the towns of Lunenburg and Shirley had adopted a line different from the true one, as the line between the towns, the deeds would convey to that line, if there were no monuments to fix the line intended; that it was not the only question upon this point whether the legislative line was in fact the original record line ; if there was a traditional line adopted by the towns, universally considered to be the Shirley and Lunenburg line, although different from the original and true record line, between the towns, such traditional line would be the true line for the purposes of the conveyances; although the presumption would be that the deeds conveyed to the true record line, until such traditional and reputed line was shown to exist; that the jury should inquire what line was adopted and treated by the towns and the inhabitants as the town line, and if they had

adopted and treated another and a different line from the actual record line as the town line, the deed of Whitney to Page would convey to that adopted line and not to the record line." The verdict was for the plaintiff; and the defendant alleged exceptions.

*F. H. Dewey & F. P. Goulding*, for the defendant.

*G. A. Torrey*, for the plaintiff.

GRAY, J. The boundary called for in the deeds of the plaintiff was " Shirley line," and in the deed on which the defendant relied, " Lunenburg line." These words would be equally satisfied by the line which was in law the boundary between the two towns, or by a line which was universally considered and reputed to be such boundary at the time of the making of the deeds in question. Evidence was introduced at the trial that the legal line between the towns differed from what it was universally supposed to be, and thus disclosed a latent ambiguity, which could only be cleared up by oral evidence. The case comes exactly within the familiar maxim, as long ago expounded by Lord Bacon. *Ambiguitas verborum latens verificatione suppletur ; nam quod ex facto oritur ambiguum verificatione facti tollitur.* " *Ambiguitas latens* is that which seemeth certain and without ambiguity for anything that appeareth upon the deed or instrument, but there is some collateral matter out of the deed, that breedeth the ambiguity." " As if I grant my manor of S. to I. F. and his heirs, here appeareth no ambiguity at all; but if the truth be that I have the manors both of South S. and North S. this ambiguity is matter in fact; and therefore it shall be holpen by averment, whether of them was that the party intended should pass." Bac. Max. *reg.* 25.

In the case of *Cook* v. *Babcock*, 7 Cush. 526, on which the defendant relies, the deed of land in Blandford, bounded " north on the line of said Blandford," which was held to be limited to the legal boundary line of the town, was made after that line had been established by acts of the legislature; the evidence offered and held incompetent went no further than to show that before those acts a different line defined by marked trees had been understood and reputed to be the boundary line of Blandford ; and Chief Justice Shaw distinguished the case from such

a one as the present, saying, " When indeed upon application
of the description to the land, it is doubtful what was intended,
this is a latent ambiguity, and then evidence *aliunde* may be
given; as where a description gives the line as running to a
maple-tree marked, and two maple-trees are found, either of
which would answer the description ;" and again : " When the
true line has been long doubtful, and conveyances have been
made, bounding on the reputed or supposed line, or line of act-
ual holding and possession, and such reputed or supposed line
is capable of being shown by proof, such conveyances will have
their full effect in passing the land up to such supposed line,
though a different line be afterwards fixed by the legislature as
the true line by a declaratory act." We fully concur with the
judgment and the reasons of the supreme court of New Hamp-
shire in *Hall* v. *Davis*, 36 N. H. 569, in which it was held that
the words " Derry old line," used in a deed to define a boundary,
were susceptible of various meanings, as the original line of
Londonderry, or any other line marked by monuments and
called by that name; and that evidence that there was such an-
other line showed such an ambiguity in the words of the deed
as to admit of parol testimony to prove which line was intended
to be designated thereby. Another good illustration of the prin-
ciple is afforded by the case of *Sutton* v. *Bowker*, 5 Gray, 416, in
which goods were by the terms of a bill of lading to be deliv-
ered " at the Essex Railroad Wharf ;" it appeared that the
Essex Railroad Company owned but one wharf, and there
was another generally known as the Essex Railroad Wharf
and used by the railroad company to receive merchandise at;
and it was held that, for the purpose of showing that the latter
wharf was intended, evidence of the comparative ease of ac-
cess and rate of freight to the two wharves, and of the pre-
vious dealings of the parties under similar bills of lading, was
admissible.

In the case at bar, the jury were therefore rightly instructed
that, although the presumption upon the face of the deeds would
be, that they conveyed to the true record line, yet that line was
not necessarily the boundary between these parties, but if a dif-

ferent line was shown to exist, adopted by the towns and their inhabitants, and considered universally (which would include the parties to the deeds) to be the Shirley and Lunenburg line, that would be the boundary referred to in the conveyances.

But in one particular the instructions of the learned judge who presided at the trial were not sufficiently guarded. The plaintiff had offered evidence that from 1830 to 1848 the line to which he claimed had been perambulated as the town line between Shirley and Lunenburg; and the jury, besides the instructions already mentioned, were instructed that, " if the towns of Lunenburg and Shirley had adopted a line, different from the true one, as the line between the towns, the deeds would convey to that line, if there were no monuments to fix the line intended." This instruction was erroneous. The towns had no power to alter the boundary line between them. The perambulations of the boundaries of the towns by the selectmen in the execution of the duty imposed upon them by law were doubtless competent, but they were not conclusive, evidence of the line intended by the parties. Rev. Sts. *c.* 15, §§ 1–7. *Middleborough* v. *Taunton*, 2 Cush. 409. *Lawrence* v. *Haynes*, 5 N. H. 33. And there is no absolute presumption of law that parties to a deed intend to govern themselves by a boundary line adopted by towns or town officers, which is proved not to accord with the true and legal boundary line; and when the words which they use are equally applicable to either, it is for the jury, upon a consideration of all the circumstances, to determine which was actually intended. *Exceptions sustained.*