## E. H. & W. B. ALDRICH v. SILAS L. GRIFFITH.

GENERAL TERM, 1893.

*Description in deed. Latent ambiguity. Adverse posses-*
*sion. Color of title. Unrecorded deed. Evidence.*
*Field book. Authenticity for the court.*

1.  The deed of the defendant was by courses and distances.
    One course was "to the north line" of Mt. Tabor, "thence
    east on the north line of Mt. Tabor." The north line
    of Mt. Tabor and the south line of Wallingford were
    identical and this line was in dispute between the two
    towns, and a line had been surveyed out and marked by
    spotted trees where each town claimed it. By treating the
    line as where the town of Mt. Tabor claimed it, the
    courses and distances of the defendant's deed would be
    satisfied. The jury found that the true line was as claimed
    by Wallingford. *Held*, that while the true north line of
    Mt. Tabor would be *prima facie* the boundary referred
    to in the defendant's deed, nevertheless if the parties in-
    tended by that description the line as claimed by Mt.
    Tabor, the defendant would have under the deed color of
    title to that line.

2.  An unrecorded deed may give color of title.

3.  The defendant would have color of title to that portion of
    the premises actually situated in the town of Wallingford,
    although his deed never was recorded in that town.

4.  The evidence of the defendant tended to show that at the
    time his grantor took possession of the premises described
    in the deed, the boundaries were indicated by plainly
    marked lines of spotted trees, unmistakable and easily fol-
    lowed; and that his grantor and he had occupied portions
    of said tract, claiming title to the whole under the deed for
    a sufficient length of time and in such a manner as to ac-
    quire title by adverse possession. *Held*, that the defendant
    would thereby have acquired such title to that portion of
    the tract in the town of Wallingford and that this question
    should have been submitted to the jury.

5.   *Held*, that the evidence tended to show title by adverse
     possession in the defendant and his grantor to the *locus in
     quo* independent of color of title.

6.   Upon the question of title by adverse possession the mere
     lapse of ten years between two acts of possession, does
     not, as matter of law, break the continuity.   Possession
     having been once actually taken, it is for the jury to say
     whether the possessor intended to abandon it.

7.   A witness may refresh his recollection by reference to a
     memorandum which he knows to have been correct when
     made, although not made by him.

8.   The question being as to the true location of the lines be-
     tween two towns, evidence of the land owners in both
     towns that they have owned and occupied their lands in ac-
     cordance with the line as claimed by the plaintiffs, is ad-
     missible in their behalf.

9.   The authenticity of an ancient field book offered in evidence
     is a preliminary question for the court.

10.  The genuineness of such a document, if sufficiently ancient,
     is shown *prima facie* by the fact that it comes from the
     proper custody.

Action on R. L., s. 4206, to recover damages for the cut-
ting of trees upon the lands of the plaintiffs.   Plea, the
general issue.   Trial by jury at the September term, 1892,
Rutland county, TAFT, J., presiding.   Verdict and judg-
ment for the plaintiffs.   The defendant excepts.

The evidence of the plaintiffs tended to show that the
lands in question were situated in the southerly part of the
town of Wallingford.   The evidence of the defendant
tended to show that they were situated in the northerly part
of the town of Mt. Tabor.   The question litigated before
the jury was the location of the town line between the towns
of Wallingford and Mt. Tabor.

It was conceded by the defendant that if the line was lo-
cated as claimed by the plaintiffs, the cutting was entirely in
the town of Wallingford, and it was conceded upon the part
of the plaintiffs that if the line was located as claimed by

the defendant, the cutting was entirely in the town of Mt. Tabor. The court instructed the jury that the only question for them to consider was the location of the town line and the amount of the damages; and to this instruction the defendant excepted.

The defendant claimed that even though the line was located as the evidence of the plaintiffs tended to show, he still had title to the premises by adverse possession, and that this question ought also to have been submitted to the consideration of the jury. The parties agreed that the northwest corner of the town of Mt. Tabor and the southwest corner of the town of Wallingford was at a marble post in the railroad embankment. The plaintiffs claimed that the south line of Wallingford and the north line of Mt. Tabor ran easterly from this marble post to a spruce stub, and this had been for many years the location of the line as claimed by the town of Wallingford. The defendant claimed that the said line ran from the marble post to a point something more than a hundred rods north of the spruce stub, and this had been for many years the claim of the town of Mt. Tabor. In 1858 proceedings had been begun by Mt. Tabor for the location of this disputed line, a court's committee had been appointed and a survey made by that committee along the line as claimed by the town of Mt. Tabor, which was known as the " Brown survey" and at the western extremity of which had been erected a stone post which the town of Mt. Tabor claimed was the true northeast corner of that town. The committee being unable to agree, the suit was finally discontinued and no further proceedings were had. Wallingford continued to claim the line to the spruce stub, and Mt. Tabor continued to claim the line as surveyed by Brown. The jury found that the true line was as claimed by the plaintiffs.

The defendant took his title from one Warren Horton and others, by deed dated June 25, 1873, and they had derived

their title from one David Arnold by deed dated March 31,. 1864. Warren Horton testified, in behalf of the defendant, that, before taking the deed from Arnold, he, acting for him-- self and his co-grantees, went with David Arnold around the boundaries of the premises conveyed; that the lines were then spotted trees, easily followed and unmistakable, and that the north line was at that time as claimed by the de-. fendant now; that upon receiving his deed from Arnold, he, in behalf of himself and his co-grantees, went into possession of portions of the granted premises and contin-- ued in possession thereof, claiming the whole, until they conveyed the premises to the defendant, in 1873. The tes- timony of Horton further tended to show that he employed one Kent to take charge of the premises for him, and in consideration thereof allowed Kent to cut a small amount of shingle timber upon various portions of the premises, and that in the exercise of this right he did cut some of said shingle timber upon the locus in question.

The evidence of the defendant tended to show that upon receiving his deed from Horton he went into the possession of the premises, occupying parts thereof, and claiming title under his deed to the whole; that in 1874 he cut thirty or forty thousand feet of lumber upon the locus, in 1878 or 1879 some fifteen thousand of lumber and eighty cords of wood, and that he had exercised no other acts of ownership upon the locus itself until he began in 1890 the cutting for which this suit was brought.

The deed from David Arnold to Horton and others described the land conveyed by courses and distances; that portion of the description which is material is as follows:

"Thence north thirty-six rods to the north line of the James Nevins lot (meaning north ten degrees east) as laid: down on the maps and charts of said town of Mt. Tabor, to the north line thereof aforesaid; thence east on the north: line of Mt. Tabor aforesaid, ten degrees south, five hundred rods to a corner opposite to the northeast corner of Joseph.

Ava's present occupied homestead farm, which farm is the west half of lot No. 7 in the 12th Range, 1st Division, original proprietor John Aulger, and which said corner is in the north line of said Mt. Tabor as laid down by the maps and charts of said town; thence south, etc."

The plaintiffs offered in evidence a book which they claimed was an ancient field book of the town of Wallingford. For the purpose of establishing its authenticity they called one Townsend, who testified that he was then, and had for many years been, the town clerk of the town of Wallingford; that he received the book in question among the other books and papers of the office, and had always understood it to be the ancient field book of the town of Wallingford. The book itself purported to contain the original surveys of the three divisions of the town of Wallingford; certain records of the proprietors of that town, all bearing date before the year 1800, and a more recent survey, which purported to have been made in 1832.

The book was submitted to the court and admitted after an examination by it. To its admission the defendant excepted.

The evidence of the plaintiffs tended to show that as far back as 1832 the spruce tree, which they claimed was the true northeast corner of Mt. Tabor, was a marked corner, and that it had been recognized as such northeast corner of Mt. Tabor by the inhabitants of both Mt. Tabor and Wallingford residing in that vicinity, and that a well defined line ran westerly from said spruce stub, which was the line claimed by the plaintiffs to be the true town line. In this connection the plaintiffs called several witnesses, who were residents and land owners in both towns, who testified that they had owned and occupied their lands up to this line as the true town line. To the admission of the testimony of these witnesses the defendant excepted.

The plaintiffs improved as a witness one Frank Miller, from whom they had derived their title, and who testified

that about 1860 he had run out the line in dispute, he being then the owner, in connection with a surveyor by the name of Shaw, and that they had cut an old mark from a tree upon this line and counted the grains which had grown over the mark. The witness having so testified, was shown a memorandum book, which he said contained a record of the survey made by Mr. Shaw at his request at that time, and which he saw and read within a day or two after it was made. After having read this memorandum, he was allowed, against the exception of the defendant, to state the number of grains which they had counted.

*J. C. Baker* and *J. K. Batchelder* for the defendant.

The question of adverse possession should have been submitted to the jury. The evidence of the defendant tended to show that he entered upon a portion of the premises, claiming title to the whole, and occupied for more than fifteen years. Under these circumstances he would acquire title to the whole, for he obtained color of title by his deed. *Crowell* v. *Bebee*, 10 Vt. 33 ; *Hodges* v. *Eddy*, 38 Vt. 327 ; *Partch* v. *Spooner*, 57 Vt. 583.

In order to give color of title a deed need not be recorded. *Swift* v. *Gage*, 26 Vt. 224 ; *Buck* v. *Squires*, 23 Vt. 498.

Whether under all the circumstances the defendant had so occupied as to obtain title by adverse possession, was for the jury. *Plimpton* v. *Converse*, 42 Vt. 712 ; *Soule* v. *Barlow*, 49 Vt. 329 ; *Beach* v. *Sutton*, 5 Vt. 209 ; *Woods* v. *Transportation Co.*, 5 Am. St. Rep. 393.

Whether there was an interruption of possession, was for the jury. *Webb* v. *Richardson*, 42 Vt. 465 ; *Spear* v. *Ralph*, 14 Vt. 400 ; *Hale* v. *Rich*, 48 Vt. 217.

*C. A. Prouty* and *C. L. Howe* for the plaintiffs.

The authenticity of the field book was a preliminary

question for the court.   Best, Ev., 300; Thompson, Trials, ss. 318, 324.

The presumption is that it was genuine, since it came from the proper custody.   Best, Ev., s. 402; 1 Greenl., Ev., ss. 20, 21.

The court having found it to be authentic, it was admissible.   *Hard* v. *Gage*, 6 Vt. 170.

Miller was properly allowed to refresh his recollection by reference to the memorandum.   It is not necessary that he should have made it himself so long as he saw it at the time it was made and knew its accuracy.   1 Best, Ev., s. 224; *Lapham* v. *Kelley*, 35 Vt. 195; *Sowles* v. *Burt*, 36 Vt. 652.

When the facts are not disputed the question of whether a party has title by adverse possession is for the jury.   Wood, Lim. of Actions, s. 258, p. 519; *Latremouille* v. *Ben. & Rut. Rd. Co.*, 63 Vt. 336.

The *locus in quo* was only bounded by a line of spotted trees and that is not an enclosure.   Wood, Lim. of Actions, s. 257; *Coburn* v. *Hollis*, 3 Met. 125; *Slater* v. *Jepherson*, 6 Cush. 129; *Buck* v. *Squiers*, 23 Vt. 498; *Swift* v. *Gage*, 26 Vt. 224; *Hodges* v. *Eddy*, 38 Vt. 327.

The evidence of the defendant did not tend to show an actual possession in him or his grantor.   The jury have found that he was not the real owner of the premises; but that the plaintiffs were.   When adjacent parcels overlap one another and neither party is in the actual possession, that party is in the constructive possession who has the true title. Hence in this case the defendant never had constructive possession under his deed as against the plaintiffs.   *Crowell* v. *Beebe*, 10 Vt. 33; *Hodges* v. *Eddy*, 38 Vt. 327, 344; *Carson* v. *Durnett*, 1 Dev. & Bat. Law 546.

The deeds of the defendant and his grantor never having been recorded in the town of Wallingford, could not give the defendant constructive possession of that portion of the

premises situated in that town. *Proprietors, etc.*, v. *Laboree*, 2 Greenl. 275, 286; *Hodges* v. *Eddy*, 38 Vt. 345.

The defendant not having color of title to the *locus* had no such continuous possession of it as would ripen into a title by adverse possession. 3 Washb. R. P. (5th Ed.) Chap. 2, s. 7; *Wells* v. *Austin*, 59 Vt. 157; 2 Smith's Lea. Cas. (Hare and Wallace's Notes), 600, 639, 640.

THOMPSON, J. The defendant claims title to the *locus in quo* by adverse possession for fifteen years, by himself and his grantors, under color of title. He contends that the warranty deed from Arnold to the Winchesters and Horton, executed and delivered in A. D. 1864, and the conveyances to him in A. D. 1873 by Arnold's grantees, gave color of title. In these conveyances the land conveyed is specifically described by courses and distances. One course runs " to the north line" of Mt. Tabor, "thence east on the north line of Mt. Tabor," etc. The division line between the towns of Wallingford and Mt. Tabor is the north line of Mt. Tabor. It was conceded that the true northwest corner of Mt. Tabor was a marble post in the railroad embankment. The plaintiffs claimed the division line between the towns was a line running from this corner easterly to a spruce stub or tree, while the defendant claimed it was a line running from this northwest corner easterly to a stone monument something over a hundred rods north of the spruce tree. Evidence was introduced tending to prove the claims of each party in this behalf. If the division line is located as claimed by the defendant, the courses and distances called for by his deeds, and the deed from Arnold, are satisfied by running to this line and on it, and the *locus in quo* is included in the land described in these deeds. If the line is located as claimed by the plaintiffs, and the distances called for by these deeds must yield to this location of

the line as the true north line of Mt. Tabor, then the *locus in quo* is not included in the land described.

The plaintiffs now insist that the jury have found the true division line between the towns, to be as claimed by them, and that the distances called for by these deeds must yield to the actual location of the line established by the verdict, and hence the defendant and his grantors never had color of title to the *locus in quo*.

The words " north line of Mt. Tabor " would be equally satisfied by a line which was in law the legal boundary, or by a line which was considered and reputed to be such boundary, at the time of the execution and delivery of the deed from Arnold. The evidence tended to show that prior to A. D. 1858, a controversy had existed between these towns, in respect to the location of the boundary between them. About A. D. 1858 a petition was pending in court to have it established, and at that time each line, as claimed by the plaintiffs and by the defendant, was surveyed and marked more or less, but the committee appointed by the court were unable to agree in respect to which was the true line. After a time the proceeding in court was discontinued. Ever since to the present time, Mt. Tabor, its officers and inhabitants, have claimed and insisted that the true boundary was the line claimed by the defendant. Thus a latent ambiguity was disclosed which could only be cleared up by oral evidence. The case comes exactly within the familiar maxim as expounded by Lord Bacon. "*Ambiguitas verborum latens verificatione suppletur ; nam quod ex facto oritur ambiguam verificatione facti tollitur.*"

"*Ambiguitas latens* is that which seemeth certain and without ambiguity for anything that appeareth upon the deed or instrument, but there is some collateral matter out of the deed, that breedeth the ambiguity." Bac. Max. reg. 25.

Although the presumption upon the face of the deed would be that the " north line of Mt. Tabor " therein mentioned,

was the true line, yet if the line claimed by the defendant was shown to exist, and was adopted by Mt. Tabor, its inhabitants, and the parties to the deeds, then that would be the boundary referred to in the deeds, and would prevail. This view is in accord with *Putnam* v. *Bond*, 100 Mass. 58, and *Hall* v. *Davis*, 36 N. H. 569. The deeds would thus give color of title. *Putnam* v. *Bond, supra.* This phase of the case should have been submitted to the jury with proper instructions, as the defendant's evidence tended to show that the parties to the deeds at the time they were executed and delivered, understood the north line of Mt. Tabor to be the line now claimed by the defendant to be the boundary between the towns.

The plaintiffs further contend that as the jury have found the true line to be the line running from the marble post to the spruce tree, and as the *locus in quo* is between this line and the line for which the defendant contends, it is therefore in Wallingford, even though the latter line be taken as the boundary intended in the deeds, and that inasmuch as these deeds were not recorded in Wallingford, they gave no color of title to the *locus*.

To give color of title, it is not necessary that the claim should be under an instrument containing the statutory requisites to convey land. It is enough that the claim of title be under an instrument in writing, and defining the extent of the claim. *Beach* v. *Sutton*, 5 Vt. 209; *Swift* v. *Gage*, 26 Vt. 224; Ang. Lim. (6th Ed.) s. 404 and note 2. The principal reason for requiring such instrument to be recorded would seem to be to give the real owner of the land therein described, notice of the claim made, so that he might assert his right thereto. But a deed not executed according to the statute requirements is not entitled to registry, and consequently the record thereof is not constructive notice to any one, as to its contents. *Isham, Admr.*, v. *Bennington Iron Co.*, 19 Vt. 230; *Pope* v. *Henry*, 24 Vt. 560.

Hence the logical conclusion is that a record in the proper office is not necessary to give color of title. And so hold the authorities. *Beach* v. *Sutton*, 5 Vt. 209; *Spaulding* v. *Warren*, 25 Vt. 316; *Swift* v. *Gage*, 26 Vt. 224; *Oatman* v. *Barney*, 46 Vt. 594; *Campbell* v. *McArthur*, 2 Hawks 33; 11 Am. Dec. 738 and note; *Wood* v. *Montevallo Coal & Transp. Co.*, 84 Ala. 560; 5 Am. St. Rep. 393; Ang. Lim. (6th Ed.) s. 404, note 2; Wood, Lim., 530. In *Hodges* v. *Eddy*, 38 Vt. 345, Poland, Ch. J., defined color of title to be a

" Deed or survey of land, placed upon the public record of land titles, whereby notice is given to the true owner, and all the world, that the occupant claims title."

If by this, the court intended to limit color of title to an occupancy under a deed executed as required by the statute, or a survey, duly recorded, it is sufficient to say that the question as to what kind of an instrument would give color of title, was not raised in that case, and the remarks of the court upon that subject were wholly *obiter dictum*.

The evidence tended to show that prior to and at the time of the execution of the deed from Arnold, the land described in it was clearly indicated by visible monuments entirely around it, consisting of old lines of spotted trees, unmistakable and easily followed; and that in A. D. 1864, immediately after taking the deed, Horton for himself and his co-owners, took possession of the premises within these lines, and occupied parts thereof, claiming title under his deed, to the whole, until the conveyance to the defendant in 1873, when the latter went into the possession of the premises under his deeds, and has continued in possession thereof to the present time, to the marked lines, claiming title to the whole continuously. The evidence also tended to show that from a time considerably before March 31, 1864, the date of the deed from Arnold, to the time of the alleged trespasses, the defendant and his grantors had been in the open, hostile,

continuous and uninterrupted possession of the land described in the deed from Arnold, and to the marked lines, claiming title thereto, and that these lines included the *locus* of the alleged trespasses. The evidence clearly tended to show color of title both in Horton and the Winchesters, and in the defendant. If the land was not in the actual possession of the true owner, when they took possession, their occupation and use of a part thereof, claiming the whole under color of title, would give them constructive possession of the whole, and such possession, if open, notorious, continuous, uninterrupted and hostile, for fifteen years, would give good title, even against the true owner. *Pearsall* v. *Thorp*, 1 D. Chip. 92: *Beach* v. *Sutton*, 5 Vt. 209: *Crowell* v. *Beebe*, 10 Vt. 33; *Ralph* v. *Bayley*, 11 Vt. 521; *Spear* v. *Ralph*, 14 Vt. 400; *Spaulding* v. *Warren*, 25 Vt. 316; *Swift* v. *Gage*, 26 Vt. 224; *Jakeway* v. *Barrett*, 38 Vt. 316; *Hodges* v. *Eddy*, 41 Vt. 485; *Webb* v. *Richardson*, 42 Vt. 474; Wash. R. P. (3rd Ed.) 135, (*496); *Hicks* v. *Coleman*, 25 Cal. 122; 85 Am. Dec. 103; *Wood* v. *Montevallo Coal & Trans. Co.*, 84 Ala. 560; 5 Am. St. Rep. 393. The evidence tended to show not only such possession by the defendant and his grantors together, but by the defendant alone. He also claimed title to the *locus in quo* by adverse possession by himself and his grantors for fifteen years, independent of their alleged possession under color of title, and his evidence tended to prove such possession, and acts of use and occupation by himself, Arnold and Horton, and those acting under them, as support this contention.

But the plaintiff insists that the interval of time between the various acts of ownership and possession relied upon by the defendant in support of this claim, was such as to break the continuity of possession necessary to acquire title in this way. This question was discussed by Peck, J., in *Webb* v. *Richardson*, *supra*, and he there lays down the true rule applicable to a case of this kind. He says:

"To constitute a continuous possession it is not necessary that the occupant should be actually upon the premises continually. The mere fact that time intervenes between successive acts of occupancy does not necessarily destroy the continuity of the possession. The kind and frequency of the acts of occupancy necessary to constitute a continuous possession depend somewhat upon the condition of the property and the uses to which it is adapted in reference to the circumstances and situation of the possessor, and partly on his intention. If in the intermediate time between the different acts of occupancy, there is no existing intention to continue the posession or to return to the enjoyment of the premises, the possession, if it has not ripened into a title, terminates, and cannot afterwards be connected with a subsequent occupancy so as to be made available towards gaining title, while such continual intention might, and generally would, preserve the possession unbroken. The principle is tersely stated in the civil law, thus : A man may retain possession by intention alone, yet this is not sufficient for the acquisition of possession."

In *Patchin* v. *Stroud*, 28 Vt. 394, this court held that a lapse of fifteen years between any of the acts of possession does not *per se*, as a matter of law, show conclusively an abandonment of the first possession, in a case resting upon adverse possession, but that that was a question of fact for the jury.

The evidence of the plaintiffs tended to controvert that introduced by the defendant in support of his claims in respect to his title by adverse possession, whether obtained under color of title or otherwise. The evidence standing thus, it was for the jury to determine, under proper instructions, whether the defendant had acquired title by adverse possession, and the refusal of the court to submit this question to them was error. *Stevens* v. *Dewing*, 2 Aik. 112 ; *Beach* v. *Sutton, Spear* v. *Ralph, Webb* v. *Richardson, and Wood* v. *Montavallo Coal and Trans. Co., supra; Plimpton* v. *Couverse*, 42 Vt. 712 ; *Hale* v. *Rich* 48 Vt. 217 ; *Soule* v.

*Barlow*, 49 Vt. 329 ; *Patchin* v. *Stroud, supra ; Lelinas* v. *State Agricultural Society*, 60 Vt. 249.

The witness, Miller, was permitted to testify in respect to the number of grains in the mark in the block of wood cut out, he, apparently, having first refreshed his recollection by the memorandum made at his request by Mr. Shaw, at the time when the block was obtained. In this the defendant says there was error. It was not necessary that the memorandum should have been made by the witness to entitle him to refer to it. *Davis* v. *Field*, 56 Vt. 426. Where the witness neither recollects the fact nor remembers to have recognized the written statement as true, and the writing was not made by him, his testimony, so far as founded upon the written paper, would be hearsay and inadmissible. 1 Greenl. Ev. (12th Ed.), s. 436. But in this case it does not appear that the witness did not have a present recollection of the facts to which he deposed, independent of the memorandum, nor does it appear that he did not then know the memorandum to be true. Again, the exceptions do not disclose that the memorandum related to the subject about which the witness testified, or that in giving his testimony he relied upon anything contained in it to refresh his memory. We find no error in the admission of this testimony.

While evidence of use and occupation alone by those owning and occupying lands in either town adjacent to the other town would have no legal tendency to show where a disputed line was, yet such evidence, in connection with the fact that such line and occupation were in accordance with the line in dispute, would have a tendency to show where the line was. *Beach* v. *Fay*, 46 Vt. 337. As we construe the exceptions, such was the character and tendency of the testimony of the witnesses, Allard, Colby and Graves, to which the defendant excepted. There was no error in its admission.

The defendant also excepted to the admission of the an-

cient book, designated as "Field Book," on the ground that its authenticity had not been established. Its competency was a preliminary question for the trial court to determine. I Thomp. Trials, s. 324; I Best Ev., *300. No evidence appearing to the contrary it was admissible, if its genuineness was established *prima facie.* Among other things it purports to be a field book of ancient date, showing the survey of certain divisions of lots in Wallingford. It came into possession of the present town clerk of Wallingford, as town clerk, with the other books of record of the town, "a large number of years ago." Several deeds of land in Wallingford, executed as early as A. D. 1845, introduced in evidence, referred to a field book. The genuineness of a document of this kind, on its face purporting to be sufficiently ancient, is shown *prima facie* by proof that it comes from the proper custody. I Greenl. Ev. (12th Ed.), s. 142. Hence we think the book was properly admitted. *Hart* v. *Gage*, 6 Vt. 170.

*Judgment reversed and cause remanded for a new trial.*