# ESSEX COUNTY,

## AUGUST TERM, 1866.

[ Continued from *ante*, page 70.]

---

### TOWN OF VICTORY *v.* MARTHA WELLS, JEREMIAH GLINES AND SOPHIA HANNUM.

*Minister Right. Public Lands. Grant.*

In the charter of the town of Victory in 1781, the "minister right" was not granted to the proprietors, nor to anybody else, but was reserved from the grant, and, when located, was, with its improvements, rights, rents and profits, dues and interests, to remain inalienably appropriated for the uses and purposes for which it was assigned, and to be under the charge, direction and disposal of the inhabitants of said township forever. The lot in question was drawn to this right. The defendants purchased it of B. in 1825 for $75., and had possessed, improved and enjoyed it ever since as a homestead farm, adversely to all the world, and without pretence of countervailing claim having been interposed until by the selectmen in 1858. The defendants' deeds described it as a lot drawn to the first settled minister. The lot had never been appropriated, accepted, or any right to its use acquired under the terms of its charter by the settlement of any minister of the gospel. It did not appear when, if ever, the town was organized. *Held,* that it was competent for the state to assume the control and disposal of such right reserved in the charter, and that the legislature had full power and right to grant the lot thus reserved to any person or purpose it might deem fit.

*Held,* that such possession by the defendants would seem fully to warrant the jury in finding as matter of fact that the defendants and those from whom they derived title, were holding under some valid grant by the state; and the question was properly submitted to the jury, there being circumstances also tending to show no such grant was made.

ACTION OF EJECTMENT for Lot No. 1, Range 12, in Victory. Plea, general issue, and trial by jury at the March Term, 1866, STEELE, J., presiding. Writ was dated 12th of August, 1865.

The town of Victory was chartered September 6th, 1781. The charter grants one right "to be and remain for the purpose of settlement of a minister and ministers of the gospel in said township forever." The lot in question was drawn to this right as " first minister's right." It is conceded that all the lots in town were surveyed and lines established. The defendants were in occupation of different parts of the lot when the suit was brought, and had refused to surrender possession to the plaintiff. There are two sets of old buildings on the lot ; one set occupied by the defendant Glines under the defendant Hannum, and one set by the defendant Wells. The lot has been cleared and cultivated in part, and occupied as a farm for many years, but for the last ten or fifteen years the hay has been drawn off considerably ; the fences have been running down, and the place, according to all the testimony, not improved. The plaintiff introduced but one witness, and he testified that he knew the lot before it was occupied at all ; that the first occupant of the lot was Reuben Stearns, the second was Okey Barden ; that he, the witness, occupied it one year as the tenant of Okey Barden ; that the next occupant was Asa Wells, the father of the defendants, Mrs. Hannum and Martha Wells.

The defence claimed, was that the land was owned by Martha Wells, and no question was made of the plaintiff's right to recover of all the defendants if this defence was not established.

The following facts were shown by the defendants : Asa Wells purchased the lot of Okey Barden for $75., and took a deed from Barden June 21st, 1825. Asa Wells deeded it to his son George Wells, April 1st, 1828, and George Wells deeded it to his sister Martha Wells, February 27th, 1837. Asa deeded to George in consideration of his promise to support his parents. George deeded to his sister in consideration that she would take his place and support their father and mother ; Asa Wells retaining all the while a life lease to secure a support of himself and wife. Asa Wells went into occupation of the place in 1825, about the time he purchased of Barden. About two acres were cleared, and some more cut when he moved on. He built an addition to the log house then on the

31

place, and a log barn. In 1834 he, with the aid of George and some funds from Martha, built a frame house and barn. Mrs. Hannum, the defendant, entered upon twenty-five acres of this lot, under Martha, and built another small house and barn. The whole amount cleared on the lot is from twenty to twenty-five acres. Asa Wells was feeble two or three years before his death, which occurred September 6th, 1837 ; his widow, Martha Wells, mother of the defendant Martha Wells, was a cripple from December, 1838, and died May 10th, 1859. No question is made but the defendants paid a full consideration for the land. Since 1825 the lot has been continuously in the possession of said Asa Wells, and those deriving title from him, and their possession has been adverse to all the world.

The deeds of the lot to Asa Wells, from him to George, and from George to Martha describe it as lot 1, range 12, drawn to the right of the first settled minister.

There was some evidence tending to show that in 1844 or 1845 the subject of the title to this land was discussed in the Wells family, and in one of those years it appeared that Martha Wells, the mother of the defendant Martha, petitioned the legislature to set off another lot, which was unoccupied, for the support of the minister, instead of and in exchange for this. One of the defendants' witnesses also testified that he was a son of Asa Wells, and "never understood that there was any claim except by these deeds and the possession, until it was settled by arbitration.

It appeared that the first adverse claim which was set up against the defendants title, was by one of the selectmen in behalf of the town in 1858, which was followed by further conversation and notice from the other selectmen in 1859 that the town claimed the lot, and finally the matter was, on the 8th of August, 1860, submitted by the selectmen, for the town, and by the defendant, Martha Wells, to Hon. L. P. POLAND, as arbitrator, and an award in favor of Martha Wells was made and published August 11th, 1860.

The submission and award were received in evidence subject to any objections that might be made to them.

The defendants claimed that the award was a sufficient answer to

Victory *v.* Wells et al.

the plaintiffs' suit. The plaintiffs claimed that the award was not effectual. 1st. Because the submission and award were unsealed. 2d. Because neither the town nor its officers have, by law, authority to submit the matter to arbitration. The court sustained the plaintiffs' claim that the award was invalid,—to which the defendants excepted.

The defendants claimed that the long, continuous, undisturbed, adverse possession of the defendants and their grantors under claim and color of title created a title by prescription. The court refused to so rule. Exceptions by defendants. The defendants also claimed that it created a conclusive presumption of law that the possession was under good title. The court refused to so rule. Exceptions by the defendants.

The defendants also claimed that it created a presumption of fact and the court ought to advise the jury to find the fact, and requested the court so to do, which the court refused. Exceptions by the defendants.

The plaintiff claimed that upon the above facts, the lot was exempt as well from the rule of prescription as from the statute of limitations; that no grant of the lot could be presuméd; that no one had authority to grant it, and that the deeds acknowledged and recognized it as the minister lot, and that a verdict should be directed for the plaintiff. The court refused to so rule and direct, and did rule such possession to be *prima facie* evidence that it was *originally* under legal title, by grant, to Okey Barden, from the legislature, (it being conceded that the lot had never been appropriated, accepted, or any right to its use acquired, under the terms of the charter, by the settlement of any minister of the gospel,) but as there were circumstances tending to show that such a grant was not made, the question must be left to the jury under instructions that such possession constitutes a presumption or *prima facie* evidence of such a grant, liable, like other evidence, to be overcome by evidence the other way, and it was so submitted. Verdict for the defendants. Exceptions by the plaintiff to the refusal of the court to rule and direct as requested.

*George N. Dale*, for the plaintiff.

The presumption of a grant to the defendants' grantors is not well founded. It is not sustained by the case of the *University of Vermont* v. *Reynolds*, 3 Vt. 542, for in that case the tract of land was granted to the plaintiffs and they made no divisions of the lands and asserted no claim to it under the charter; and the whole town was afterwards settled and occupied by other persons, none of whom held or claimed under the original grantees but adverse to all the world, the grantees sleeping for thirty-eight years. There the jury might with some consistency presume in favor of the defendants, either an antecedent grant, a surrender of the charter, or the extinguishment of any title which might have been acquired under it, and for the following reasons which do not apply to the case at bar, viz: Because the defendant in no way recognized the grant nor the existence of a grant; and because the grantees never went into possession under the charter. The town was surveyed into lots and then abandoned.

Now, in this case, the town was surveyed and the lots drawn, and the town was settled *by the grantees or those claiming under them*, and all of the defendants' deeds recognize and state the fact, that this lot was drawn to the right of the first settled minister.

In the case above cited the court say if it were required to presume a grant from the state, subsequent to the grant to Allen and his associates, none could be presumed unless it was also presumed that the first had been surrendered.

Now there can be no grant presumed to the defendants in the case at bar, because it could not have been granted previous to the plaintiff's grant, for if it was the plaintiff's grant, being unquestioned, it could not exist without the irresistible presumption of the extinguishment of such previous grant to the defendants.

And no grant can be presumed to the defendants subsequent to the plaintiff's, because, before that presumption can arise, it must be presumed that this grant to the plaintiff was in some way extinguished, and that is impossible because the grantees in this charter have taken possession of the lands and held them under the charter ever since the grant was made. The charter provides that this right

shall remain inalienably appropriated to this use forever, and be under the direction and control of the inhabitants of the town forever. There could be no power to grant to the defendants, because, before such power could exist, our grant must have been surrendered, and how could it have been surrendered?

The state have never asserted its right to retake the lands, and if it had it was powerless to enforce such a claim. Could the town or its selectmen surrender it? The town holds it for a specific purpose forever. *Trustees of Dart. Coll.* v. *Woodward,* 4 Wheat. 490, *et seq.* Or is it to be presumed that the whole system of these grants has been destroyed simply to quiet *one* person in the possession of a lot of land? *Enfield Toll Bridge Co.* v. *Hartford & N. H. R. R. Co.*, 17 Conn. 40.

*W. Heywood*, for the defendants.

The long possession of the defendants and their grantors constituted a *prima facie* title, and unless some evidence was adduced to rebut the legal presumption, the inference should be drawn that the title commenced by way of a grant. Upon the point that the direction to the jury was right, see *Campbell* v. *Willson*, 3 East, 294. In this case the direction of the judge at the trial was precisely like the charge in our case, and the court of King's bench, sustained the charge. *Ford* v. *Ford*, 3 Saund. 172, and note; Matthews' Presumptive Ev., pp. 5 to 20, and note, and *a* p. 12. But there are Vermont cases that seem to go the length of deciding that the court ought to direct the jury to find in favor of such long possession. *Townsend v. Downer*, 32 Vt. 183; *Tracy* v. *Atherton*, 36 Vt. 503.

In *Reed* v. *Brookman*, 3 T. R. 151, BULLER, J., says: " For the last two hundred years it has been considered as clear law that grants, letters patent, and records, may be presumed from length of time. It is laid down in Lord Coke's time, 12 R. 5 as undoubted law at that time, and in modern times it has been adopted, in its fullest extent. *The Mayor of Kingston* v. *Horner*, Campbell 102; *Powell* v. *Milbank*, 1 T. R. 379, n."

The same doctrine is also well settled in the United States. *Brattle Square Church* v. *Bullard*, 2 Met. 363; *White* v. *Loring.* 24

Pick. 319 ; *Ryder* v. *Hathaway*, 21 Pick. 298 ; *Valentine* v. *Piper*, 22 Pick. 85 ; *Downing* v. *Pickering*, 15 N. H. 344 ; *French* v. *Marston*, 4 Fost. 440 ; *Wendall* v. *Moulton*, 6 Fost. 41.

In Vermont it is so settled in *Mitchell* v. *Walker*, 2 Aik. 266 ; *Shumway* v. *Simons*, 1 Vt. 53 ; *University of Vt.* v. *Reynolds*, 3 Vt. 542 ; *Sellick* v. *Starr*, 5 Vt. 255 ; *Turnpike Co.* v. *Bishop*, 11 Vt. 198 ; *Townsend* v. *Downer*, 32 Vt. 183 ; *Tracy* v. *Atherton*, 36 Vt. 503 ; 1 Greenl. Ev. § 17.

The opinion of the court was delivered by

BARRETT, J. There is little need of discussing whether the acquirement of rights in real estate by long possession and occupancy be by prescription, or by conclusive presumption of grant, or by grant found as matter of fact. The subject has been sufficiently examined and discussed in *Townsend* v. *Downer*, 32 Vt., 183, and in *Tracy* v. *Atherton*, 36 Vt. 503, and we are disposed for the present to adhere to the doctrine propounded in those cases, and give it operation and effect when involved in cases before the court for decision. The view taken of the case now before the court enables us fully to dispose of it upon the exception taken by the plaintiff to the instructions given to the jury. The lot in question " had never been appropriated, accepted, or any right to its use acquired under the terms of the charter, by the settlement of any minister of the gospel." Since 1825 it has been in constant occupancy by the defendants, and those under whom they claim, adversely to all the world, and no counter claim was made by any one till in the year 1858. The length of the period of such adverse occupancy, and the character and manner of it, would warrant all permissible presumptions, whether of law or fact, that might be necessary to perfect and quiet a title in the defendants. The point put to the jury implies that the legislature may have made a grant under which the possession was taken and held ; and this is the only point that need be considered in deciding the case. The three rights reserved in the charter, of which " the *minister right*," was one, were not by the charter granted to the proprietors, nor to anybody else. They were reserved from the grant, and when they should have been located, were, "with their improve-

ments, rights, rents and profits, dues and interests to remain inalienably appropriated for the uses and purposes for which they were assigned, and to be under the charge, direction and disposal of the inhabitants of said township forever." The cases of *Bush* v. *Whitney*, 1 D. Chip. 369, and of *Williams* v. *Goddard*, 8 Vt. 492, settle the relation and power of towns in respect to such rights. It is obvious from the statute of 1798, (Slade's Comp. 196,) that the trusteeship created and contemplated by the charter, in using the expression, "the inhabitants of said township," was in the organized municipal corporation. It is also plain, that until a minister should be settled, the inhabitants of the town were to have no beneficial right or interest in the land, nor to derive any resulting benefit from it; and, after the settlement of a minister, it was not to be pecuniary in its character, but social and public, as resulting from the religious and moral influence exerted by the gospel ministry in the town. There was no provision for the care and management of the public lands in the unorganized towns and gores till the act of 1852, giving it to the county treasurer; and it is noticeable that that act contains the first and only provision for applying the rents received for " the minister right," to the support of schools, and that only in such unorganized towns and gores. We do not stop here, and in this case, to discuss or question the legitimacy of such an appropriation, if the minister right were reserved and its appropriation fixed by the same terms as in the charter of the town of Victory. It is sufficient to say that there having been no minister settled, of course our case is not complicated by any considerations touching the personal rights of a minister settled as contemplated by the charter and the laws of this state. Until the town was organized as a municipal corporation, it was not the trustee of the right, in the sense of the charter and of the statute in the provisions therein for the care and management of it prior to the settlement of a minister.

The case does not show when the town was organized. It may be seen by looking into Thompson's Gazetteer that it was unorganized so late as 1842.

As until organized, the town, in the character of trustee, had not any "charge, direction or disposal" of the minister right, and had

no interest in it, except as it constituted an inducement for the settlement of, and a means of supporting a minister, and as no minister has ever been settled in the town, we think it was competent for the state to assume the control and disposal of such right reserved in the charter, and that the legislature—the granting power of the state—had full power and right to grant the lot thus reserved to any person or purpose it might deem fit. This being so, the fact that for more than thirty-three years the defendants and their progenitors, in their own right, under conveyances, and for consideration, and in the manner set forth in the bill of exceptions, adversely to all the world, and without any pretence of countervailing claim having been interposed, possessed, improved and enjoyed said lot as a homestead farm, would seem fully to warrant the jury in finding, as matter of fact, that the defendants, and those from whom they derived title, were holding under some valid grant from the state. The principles upon which presumption in cases like the present may be made, are well stated and illustrated, and the authorities cited by Judge WILLIAMS, in *University of Vt.* v. *Reynolds' Exr.*, 3 Vt. 542. We do not, however, deem it necessary to put the decision of this case upon the authority of that, so far as depends on the identity or analogy of facts. Some part of the court doubt whether, in this case, it would be warrantable to find, as matter of fact, or hold as presumption of law, upon what is stated, that the original charter had ever been surrendered, and the whole township regranted by the state. In that case it appeared that no lot in Alburgh was possessed or held under any of the proprietors named in the original charter. In the present case such fact does not appear ; and perhaps it is properly inferable that the land in Victory is possessed and held under the proprietors to whom it was granted by the original charter. In that case therefore, it might well have been presumed that the original charter had been surrendered, and the township regranted, and that thus Reynolds held under a legal title ,originating in, or confirmed by such regranting.

In this case, for the reason above indicated, no such surrender would be necessary in order to render it legitimate to find or presume the defendants to be holding under a grant from the state—for the

Victory *v.* Wells et al.

lot in question had not been *granted* by the charter, but was *reserved* to a use that has never been executed for the want of a *cestui que use*, and of which, for many years, there was no party in being designated by the charter competent and authorized to hold the estate till such *cestui que use* should have come into existence.

Judgment is affirmed.