AHASUERUS CAPEN'S ADMINISTRATOR *v.* CHARLES H. SHEL-
DON, ET AL.

May Term, 1905.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, and
POWERS, JJ.

Opinion filed August 1, 1905.

*Trespass—Possession—Color of Title—Public Lands—Min-
ister's Lot—Deed Thereof in Fee—Effect—Conditions
Subsequent—Forfeitures—Principal and Agent—Inde-
pendent Contractor—Respondeat Superior—Evidence—
Recitals in Deeds—Estoppels.*

In trespass *quare clausum* by an administrator, wherein the only
defence is that plaintiff has neither legal nor possessory title,
defendants cannot take advantage of the recital in plaintiff's
quitclaim deed of the premises in question to his intestate, that
a certain decree of foreclosure had then become absolute, for
defendants are strangers to that deed, and estoppels must be
mutual.

A recital, in a deed conveying land appropriated for the use of the
first settled minister in the town, that the grantor was such first
settled minister, is not binding on a stranger to the deed.

A town charter made a certain tract of land into a township, and
incorporated the then and future inhabitants thereof as a town,
and conditionally granted said tract of land to certain persons,
their heirs and assigns, to be divided into equal shares, one of

which was to be appropriated "for the first settled minister of the Gospel in said town." *Held,* that the proprietors took the title to the minister's lot in their corporate capacity only, and in trust for the use to which it was appropriated, determinable on the settlement of the first minister in town.

Forfeitures are odious in the law, and are never presumed.

The breach of a condition subsequent will not defeat an estate granted by the State until it asserts its right to enforce a forfeiture, and no individual can assail the title for non-performance of the condition.

Unless modified by statute, the conveyance by a trustee, whether to an innocent purchaser or not, and whether in contravention of the trust or not, vests the legal title in the grantee.

But conveyances in fee of our public lands, when the statute authorizes only leases reserving rent, are void as conveyances, though they may operate as licenses to enter, and, if they contain a sufficient description, they give color of title.

In a deed of real estate, a description of the land by metes and bounds and courses and distances is sufficient to give color of title, as is also the description of the lot by name, number and division, it appearing that the town had been divided and alloted.

When one quitclaims real estate of which he is in possession under color of title, that possession passes to his grantee, and the quitclaim deed gives the latter color of title.

A town conveyed in fee a wood lot within its chartered limits, and which its charter appropriated "for the first settled minister of the Gospel in said town." The grantees, under a claim of ownership thereof, immediately went into possession of the lot by going over it several times prospecting for minerals, and by digging a hole near the center of it four or five feet deep, and taking out what they found, and by blasting a rock, and by doing "something on the lot almost every year" for several years. *Held,* that the deed from the town gave the grantees color of title, and that, therefore, their acts upon the land were acts of ownership, constituting possession thereof.

Constructive possession, by virtue of color of title, is a sufficient possession to maintain trespass against a stranger.

The constructive possession of a lot of land by virtue of color of title, is not affected by the fact that one line thereof has been long in dispute, it not appearing that there was ever any actual adverse possession of any part of it.

In trespass for cutting timber, which plaintiff claimed was cut and delivered to defendants by their servant while he was cutting and delivering their timber from adjoining lands, defendants offered to show by one of themselves, and by their books pro-duced by the witness, the total amount of lumber cut and delivered to them from all sources by their alleged servant during the time in question, and claimed that the evidence would show that this amount was less than plaintiff's estimate of the amount cut from the disputed land. On plaintiff's objection that the evidence in the case did not tend to show certain facts which defendants claimed rendered the offered evidence admissible, and that the witness had no personal knowledge except what appeared in the books, and that it did not appear that the books contained a record of all the lumber so delivered, the court excluded the offer. *Held*, that error did not appear; for though the record is referred to, nothing is pointed out in it to show that the court erred; nor is there anything in the offer to show error, for the court might well regard it as not containing enough to obviate the objection.

In trespass for cutting timber, which plaintiff claimed was cut and delivered to defendants by W., while acting as their servant, but who, they claim, was acting under an independent contract to cut and deliver lumber from their land, it was error for the court to decline to instruct the jury on the subject of defendants' liability if their said claim was true; and the mere instruction that if the jury found that W. had trespassed on the land in dispute, the question whether he was defendants' agent was one for the jury to find one way or the other on the testimony, was inadequate.

TRESPASS for cutting timber. Plea, the general issue. Trial by jury at the March Term, 1903, Rutland County, *Haselton*, J., presiding. Verdict and judgment for the plaintiff. The defendants excepted. The opinion states the case.

The defendants also brought to the Supreme Court their petition for a new trial, under V. S. 1662, which petition was heard with their exceptions.

The petition, after alleging that the case had been pending in Rutland County Court since February, 1892, and was

continued for eleven years, during all of which time defend-
ants were ready and willing to try the same, and had their
witnesses in court for trial at the September Term, 1902, in-
cluding Emerson Williams, alleged to have committed the
trespasses complained of as defendants' agent, who was then
of sound mind and competent to testify, based the prayer for
a new trial upon the ground that, when the case came on for,
trial at the September Term, 1903, they were surprised to
find that said Williams, who was their principal witness, was
of unsound mind, and incompetent to testify; and upon the
ground that the only testimony in the case tending to show
that said Williams was the agent of defendants in the com-
mitting of the alleged trespasses, were certain admissions
made by one of the defendants, when on the stand and un-
expectedly confronted with a letter he had written to plaintiff,
dated March 18, 1889, with reference to a settlement of said
alleged trespasses by Williams, and signed, "Sheldon &
Sons," which admissions were made entirely from an infer-
ence which the witness then drew as to the import of said
letter, and from his recollection of a certain conversation with
his father, which, as he later discovered, were wholly errone-
ous.

*Marvelle C. Webber* for the defendants.

Plaintiff failed to prove his claim of title. He should have ,
proved that there was a first settled minister, and that he
deeded the land to the town of Mendon. *Potter* v. *Wash-
burn,* 13 Vt. 558; *Gardner* v. *Heart,* 1 N. Y. 528; *Davis* v.
*Moyles,* 76 Vt. 25; *Stratton* v. *Lyons,* 53 Vt. 641; *Miller* v.
*R. Co.,* 71 N. Y. 380; *Price* v. *Brown,* 101 N. Y. 669.

The question of possession was one of fact upon the evi-
dence, and should have been left to the jury. 46 Cent. Dig. 500,

§ 150; *Owings* v. *Gibson,* 9 Ky. 515; *Kinney* v. *Ferguson,* 101 Mich. 178, 59 N. W. 401; *Firth* v. *Veeder,* 58 Hun. 605, 12 N. Y. Supp. 579; *Kilborn* v. *Rewee,* 8 Gray 415.

The acts of Daggett and Stratton cannot be held, as matter of law, to have been acts of possession. *Oatman* v. *Fowler,* 43 Vt. 462; *Sawyer* v. *Newland,* 9 Vt. 383; *Doolittle* v. *Linsley,* 2 Aik. 155; *Hibbard* v. *Foster,* 24 Vt. 542.

The court erred in excluding the offer of defendants to show by one of themselves and by their books the total amount of lumber cut by Williams under his contract. 2 Wigmore Ev. §§ 1537-1546, 1560; *Dugan* v. *Mahoney,* 11 Allen 572; *Field* v. *Thompson,* 119 Mass. 151; *Nichols* v. *Haynes,* 78 Pa. 176; *Bushnell* v. *Simpson,* 119 Cal. 658.

The charge of the court as to whether Williams was acting as the servant of defendants was inadequate. *Little Pittsburgh, etc., Co.* v. *Little Chief,* 7 Am. St. Rep. 226; Rhinehart on Agency § 340; *Joel* v. *Morrison,* 6 C. & P. 501; *Bard* v. *Yohn,* 26 Pa. St. 482, 14 Am. & Eng. Enc. 830; *McCarthy* v. *Second Parish,* 71 Me. 318, 36 Am. R. 320; *Hillard* v. *Richardson,* 3 Gray 349; *Linton* v. *Smith,* 8 Gray 147; *Carter* v. *Berlin Mills,* 58 N. H. 52, 42 Am. Rep. 572; 14 Am. & Eng. Enc. 840; *McCafferty* v. *Spuyten Duyvel R. R.,* 61 N. Y. 178; *Clark* v. *Vt. & Canada R. R. Co.,* 28 Vt. 103; *Hass* v. *Phil. & So. Mail S. S. Co.,* 88 Pa. St. 269; 32 Am. Rep. 462; *Mullan* v. *S. S. Co.,* 78 Pa. St. 25, 21 Am. Rep. 2; *Riley* v. *State Line &c., Co.,* 29 La. An. 791, 29 Am. Rep. 349.

*Butler & Moloney* for the plaintiff.

Plaintiff's deed from the town gave him at least color of title, and he had therefore constructive possession of the whole lot. *Aldrich* v. *Griffith,* 66 Vt. 390; *Hull* v. *Fuller,* 7 Vt. 108;

*Shedd* v. *Powers,* 28 Vt. 652; *Webb* v. *Richardson,* 42 Vt. 465; *Davenport* v..*Newton,* 71 Vt. 11; *Rice* v. *Chase,* 74 Vt. 366; *Hosford* v. *Whitcomb,* 56 Vt. 651; *Landon* v. *Templeton,* 66 Vt. 180.

Recitals in a deed are presumed to be true, and strangers cannot question them. 1 Greenl. Ev. § § 141, 142, 143; *Cross* v. *Martin,* 46 Vt. 15; *Boyne* v. *Bigelow,* 29 Vt. 179; *Bell* v. *Barron,* 14 Vt. 307.

ROWELL, C. J. This is trespass for cutting timber on lot 19 in the 3d division in Mendon, drawn to the right of the first settled minister. The plaintiff sues as administrator of the estate of Ahasuerus Capen, and claims title by deed, and failing that, title by possession sufficient to enable him to recover against the defendants, who are strangers to all title. The defendants claim that the plaintiff has neither the legal nor a possessory title, and therefore cannot recover.

The plaintiff introduced in evidence a certified copy of the charter of the town of Medway, now Mendon, granted by the Governor of this State on February 23, 1781, whereby a tract of land particularly described was granted to the thirty-five persons named therein, their heirs and assigns, to be divided into equal shares, four of which were to be appropriated to the use of the public, and one of those, "for the first settled minister of the Gospel in said town;" and whereby said tract was incorporated into a township by the name of Medway, and the then and future inhabitants thereof declared to be enfranchised and entitled to all the privileges and immunities that other towns by law exercised and enjoyed; *habendum* on condition that each proprietor, his heirs or assigns, should plant and cultivate five acres and build a house not less than so large on the floor, or have one family settled,

on each right or share within three years from the first day of the then next June, on penalty of forfeiture of each right or share not so settled and improved, the same to revert to the freemen of the State, to be by their representatives regranted to such persons as should appear to settle and cultivate the same. The plaintiff also introduced the record of the divisions of the land in said town, setting out lot 19, and the proprietors' records of the allotments in the second and third divisions, showing the "minister's right" to be No. 19 in the third division.

The plaintiff also introduced a certified copy of the record of a quitclaim deed of said lot from one Elbridge Wellington to the town of Mendon, dated January 25, 1836, wherein the grantor described himself as having been that day regularly installed as minister over the Mendon Union Religious Society, and as being the first settled minister in said town. But it did not otherwise appear whether he was such minister or not.

The plaintiff also introduced a warranty deed from the town of Mendon to himself and one Stratton, dated July 19, 1872, and recorded the 22d of said July, purporting to convey said lot to them in fee for $1,000, and describing it by metes and bounds and courses and distances, and also as lot 19 in the third division of lots in said town, and reciting that the deed was given pursuant to a vote of the town "to sell No. 19, third division, known as the Minister Lot."

It appeared that Daggett and Stratton mortgaged the lot to the town for part of the purchase money, which was foreclosed and a decree obtained, and that on July 24, 1876, the town quitclaimed the lot to Daggett, who, on the same day, quitclaimed it to the intestate. Both deeds were recorded that day, and both described the lot as it was described in

the deed from the town to Daggett and Stratton.   But it does not appear that said decree became absolute; for whatever effect the recital in Daggett's deed that it did become absolute might have against him in some circumstances, he is not bound by it here, for the defendants cannot take advantage of it, being strangers to the deed, and estoppels must be mutual.   And indeed they do not seek to take advantage of it, nor do they otherwise claim that the decree became absolute; and in fact it did not, as shown by *Daggett* v. *Mendon,* 64 Vt. 323, 24 Atl. 242, to which we are referred in argument.

The plaintiff claims that the recital in Wellington's deed to the town that he was the first settled minister is proof that the fact was so, and that therefore his deed conveyed the fee. But whatever effect that recital might have as between the town and its grantees and those claiming under them, the defendants, who are strangers to the deed, cannot be bound by it any more than they can take advantage of the recital in Daggett's deed.   *Davis* v. *Moyles,* 76 Vt. 25, 33, 56 Atl. 174. Wellington's deed, therefore, must be laid out of the case.

The plaintiff also claims that the legal title to the lot vested in the town originally in trust for the use to which it was appropriated, determinable on the settlement of the first minister in the town; and we think that is so, for although the grant is to the proprietors, they took, not in their private, but in their corporate, capacity.   *Montpelier* v. *East Montpelier,* 27 Vt. 704; *White* v. *Fuller,* 38 Vt. 193, 200.   The defendants claim that as it appears that the lot is wooded and wholly uninclosed, it long since became forfeited under the condition of the charter requiring settlement and cultivation within three years.   But forfeitures are odious in law, and are never presumed, but must be proved.   This is a condition subsequent and not a limitation, and without considering whether

the shares "appropriated to the use of the public" are within the condition, it is enough to say that a breach of the condition would not defeat the estate until the State asserts its right to enforce a forfeiture, and that the grant coming from the State, no individual can assail the title for non-performance of the condition. *Schulenberg v. Harriman,* 21 Wall. 44, 63; *Bybee v. Oregon & California R. R. Co.* 139 U. S. 663, 675.

The plaintiff claims that the town's deed to Daggett and Stratton, though purporting to convey the fee, operated upon the legal title, and vested it in the grantees subject to the use when it arises, and that the intestate took that title from Daggett. The defendants claim that said deed is void because in contravention of the statute, which authorized only a lease reserving rent, to be annually paid into the town treasury.

It is true as a general proposition, except as modified by statute, that a conveyance by a trustee, whether to an innocent purchaser or not, and whether in contravention of the trust or not, operates upon the legal title, and vests it in the grantee. But conveyances in fee of our public lands, when the statute authorizes only leases reserving rent, are void as conveyances. *Bush v. Whitney,* 1 D. Chip. 369; *Lampson v. New Haven,* 2 Vt. 14; *Williams v. Goddard,* 8 Vt. 492, 500; *White v. Fuller,* 38 Vt. 193, 205; *Victory v. Wells,* 39 Vt. 488, 495. But they may operate as licenses to enter. *Lampson v. New Haven,* 2 Vt. 14.

As the plaintiff does not claim that the defendants, being strangers to the title, cannot object to the validity of the deed to Daggett and Stratton, that question is not considered.

But that deed gave color of title, for the description of the land is sufficient for that purpose. The description of the lot by name, number, and division is sufficient, it appearing

that the town had been divided and allotted. *Davenport* v. *Newton,* 71 Vt. at p. 18, 42 Atl. 1087; *Hunt* v. *Taylor,* 22 Vt. 556; *Middlebury College* v. *Cheney,* 1 Vt. 336. The description by metes and bounds and courses and distances is sufficient, as the land could be identified by it. 1 Am. and Eng. Ency. Law, 2d ed. 859; 1 Cyc. 1090. And it was identified by it by the parties to the deed at the time it was given, and the south and the west lines in particular were ascertained and located, in the angle of which is the *locus.*

It appeared from Daggett's testimony, which is referred to as to acts of possession, that he and Stratton went into possession of the lot as soon as they bought it by going over it several times to see what there was on it, and prospecting for minerals, and digging a hole near the center of it four or five feet deep, and taking out whatever they found, and by putting one or two blasts into a lime rock on the south-west part where the trespasses complained of were committed, to find out what kind of rock it was, and by doing "something on the lot almost every year" up to the time of the foreclosure, before which, Stratton died, but Daggett was in possession at that time and when the town quitclaimed to him, which, as the case is presented, can be treated only as a discharge of the mortgage on redemption, leaving Daggett in under the warranty deed to him and Stratton.

As that deed gave color of title, and the grantees claimed ownership under it, their acts upon the land, as they can fairly be called acts of ownership, though they might have been acts of trespass in a stranger, will be considered as acts of ownership, and as constituting possession, or an eviction of the town, which was seised only by virtue of its title. *McGrady* v. *Miller,* 14 Vt. 128; *Spear* v. *Ralph,* 14 Vt. 400. In the latter case it was held that cutting a road on a wood

lot by one having color of title, for the purpose of using it in getting off timber and clearing the land, could not be considered less than an act of ownership and a possession.

As Daggett had color of title and possession when he quitclaimed to Capen, the estate created by that possession passed to Capen, and his deed gave him color of title. *Davenport* v. *Newton,* 71 Vt. at p. 17, 42 Atl. 1087.

Now Daggett's testimony tended to show that after he deeded to Capen, he himself did repeated acts of ownership upon the lot by way of taking off timber from time to time up to the time of the trespasses; and we assume, for the contrary does not appear, and the case seems to have gone upon that theory, that he did this by authority of Capen, who died after some or all of the trespasses were committed and before suit brought. There was, therefore, no error in the charge of the court that if the facts in regard to occupation were found to be as Daggett testified, he could maintain the action if the defendants trespassed on the lot, for Capen had constructive possession of the *locus,* which was enough against strangers.

It makes no difference with Capen's constructive possession that the east line of the lot had long been in dispute, for it does not appear that there was any actual adverse possession nor any other constructive possession of any part of it, especially of the *locus. Langdon* v. *Templeton,* 66 Vt. 173, 180, 28 Atl. 866; *Aldrich* v. *Griffith,* 66 Vt. 401, 29 Atl. 376; if one has constructive possession, nothing short of actual possession will deprive him of it. *Soule* v. *Barlow,* 49 Vt. 329.

The defendants did not claim to own 19, but they owned between one and two thousand acres in that vicinity, of which lot 18 was a part, which adjoined 19 on the south. The tres-

passes complained of were committed by one Williams, who, under some contract with the defendants, cut spruce timber on their land in 1887, 1888 and 1889, and had the logs sawed, and delivered the lumber to the defendants at West Rutland at so much per thousand feet. The evidence on the part of the plaintiff tended to show that Williams, in cutting the spruce timber on the defendants' lot 18, chopped over the line onto 19, and thus committed the trespasses complained of; and the plaintiff claimed that the evidence tended to show that the timber taken from 19 by Williams was sawed and delivered to the defendants, but the defendants claimed that it did not thus tend to show.

The amount claimed to have been cut was shown by the plaintiff only, by estimating the stumpage, which tended to show a large amount.

One of the defendants was called by them as a witness, and produced the defendants' books, and having given testimony tending to show that he had charge of the books; that they were kept in the usual course of business and were correct; and that he knew of his own knowledge on what lots Williams cut lumber for the defendants in the years named, and what became of the lumber, and what Williams was paid per thousand feet delivered,—offered to show by him and the books the total amount of spruce lumber cut and delivered by Williams to the defendants at West Rutland in said years, and claimed that the testimony would tend to show that the plaintiff's estimates of the amount of timber cut by Williams on 19 exceeded the total amount delivered by Williams at West Rutland during those years from all sources. The plaintiff objected that the testimony did not tend to show that all the timber cut by Williams on defendants' land during those years was delivered by him at West Rutland; that the

witness had no personal knowledge except what appeared in the account between the defendants and Williams; and that it did not appear that the books contained a record of all the lumber cut by Williams on plaintiff's land. This the defendants denied, and the record is referred to. The testimony was excluded.

The court thought the objection well taken; and though the record is referred to, nothing is pointed out in it to show that the court was in error. Nor is there anything in the offer to show error, for the court might well regard it as not containing enough to obviate the objection.

The plaintiff claimed that the evidence tended to show that the defendants had control of Williams, and that he was cutting under their direction, and was their agent and servant. The defendants claimed that the evidence had no such tendency.

The court declined to charge the jury on the subject of the defendants' liability if Williams was acting under a contract to cut and deliver lumber from their land, but charged that if they found that Williams trespassed on 19, the question whether he was the defendants' agent—whether he acted for them, was one for the jury to find one way or the other on the testimony; that unless he was acting for them, they would not be liable. This was all the court said on the subject.

The defendants excepted to what the court said as to the defendants' liability for the acts of Williams, for that it was inadequate; and excepted because the court did not submit the branch of the case as to the defendants' liability if Williams was acting as a contractor to cut timber on their land and deliver the manufactured product at an agreed price per thousand feet.

We think the charge did not fully meet the requirements of the case on these points. It is true, as the court said, that the defendants would not be liable unless Williams was acting for them as their agent; but the jury should have been told what would make him thus acting, and what would make him acting for himself and as his own master, for otherwise they would not know that to make him the agent of the defendants it was necessary that he should be subject to their direction and control in respect of the means and manner of doing the work, and not be at liberty to act independently of them in that regard; and how that was, was a controverted question. The jury might have thought from the charge that the fact that Williams was acting under the defendants' employment made him their agent, and would not understand that that was not enough, but that it was necessary to find that that employment created the relation of master and servant between them, which is the foundation of the doctrine of *respondeat superior.*

*Judgment reversed and cause remanded.*

The petition for a new trial on the ground of surprise and newly discovered evidence has no merit, and is dismissed with costs.