TOWN OF GRAND ISLE *v.* H. Q. McGOWAN, EDSON W. GORDON, AND C. C. KINNEY.

February Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON AND TAYLOR, JJ.

Opinion filed October 14, 1914.

*Conditional Sales—Form—Lease—Assignment by Conditional Vendee—Effect—Right to Sue—Right of Possession—Termination—Replevin—Right of Action—Limitations.*

A contract purporting to be a lease of a piano, whereby the lessee was to have a bill of sale of the piano on payment of a designated rental, with interest, is a conditional sale.

The right to the possession of a school piano that, under an arrangement with its caretaker, was being used until wanted by the school, was terminated on demand for its return, made after the reopening of the school.

In the absence of an agreement of subrogation, the payment of a debt, though at the debtor's request, will not subrogate the payor to the rights of the creditor, unless the payor was under some obligation to pay, or had some interest to protect thereby.

When a school teacher, under a conditional contract of sale, purchased a piano for the school, and terminated her employment as teacher without having completed the payments, after which another, with the teacher's consent, but without any agreement of subrogation, and not being obligated thereto, nor having any rights to protect thereby, paid the balance due on the contract in order to save the piano for the school, without any assignment of the seller's claim, the transaction did not amount to a transfer of the seller's rights to the payor, nor to his subrogation thereto.

Where a school teacher, under a conditional sale contract, purchased a piano for the school, and terminated her employment as teacher without having completed the payments, and turned over all the papers to the clerk of the school board, and thereafter some payments were made upon the contract, and it became necessary to pay the balance, whereupon another, with the consent of the teacher and in order to save the piano for the school, paid the balance of the price, those facts did not show an assignment of the school teacher's rights in the piano, nor raise an estoppel in favor of the payor, since there was nothing to show that he advanced the money on the understanding that he should be reimbursed and should hold the piano as security.

Where a local Grange was allowed to use a piano, bought for the school, during the time the school was closed, a cause of action in behalf of the town to replevy the piano for the benefit of the school did not accrue until demand for the return thereof.

Where a school teacher purchased a piano for the benefit of the school and gave her personal note therefor with a lien thereon, and a part of the purchase price was paid from the proceeds of entertainments given by the pupils, the teacher's possession of the piano was in the nature of a public or charitable trust for the benefit of the school.

Where a school teacher, under a conditional sale contract, purchased a piano for the school, and terminated her employment as teacher without having completed the payment, and thereafter, and after the balance of the purchase price has been paid by another, she assigned all of her interest in the piano to the town, the fact that she had consented to said payment of the balance of the purchase

price did not constitute an abandonment of her trust, but her transfer to the town vested in it the legal title to the piano.

REPLEVIN. Plea, the general issue. Trial by court at the August Term, 1913, Grand Isle County, *Fish,* J., presiding. Judgment for plaintiff against defendants, McGowan and Gordon, and judgment that defendant Kinney recover his costs. Defendants, McGowan and Gordon, excepted. The opinion states the case.

*V. A. Bullard* for the defendants.

*Sherman R. Moulton* and *Edmund C. Mower* for the plaintiff.

TAYLOR, J. This is an action of replevin for a piano, tried by court at the August Term, 1913. Judgment was rendered on the findings of fact against McGowan and Gordon, who reserved exceptions.

In 1903 a school was being conducted in the town of Grand Isle in a building used by the town both as a town house and for school purposes. The school was called a high school and was supported by funds contributed in part by said town and in part by tuitions and subscriptions. The school was managed by the school directors of said town and one Miss Jessie Woodworth was employed as teacher. Desiring a piano for use in the school Miss Woodworth conferred with the pupils of the school and different people of the town as to how a piano could be provided. A plan was finally adopted whereby funds were to be raised by the school children by way of entertainments and subscriptions were to be solicited to pay for the piano. Dealers not being found who would sell the piano to the children of the school, it was decided that Miss Woodworth should purchase the piano for the use of the school and gave her personal note therefor with a lien upon the piano. The purchase was accordingly made of Cluett & Sons, dealers in pianos, residing in New York. Shortly after the purchase about one hundred dollars was paid upon the piano note from the proceeds of entertainments given by the pupils of the school.

At the annual meeting in 1904 the town voted to discontinue the school and from that time until 1912 did not contribute to

its support.   The school was continued for several years as a private school managed by a committee of citizens and supported by the income from tuitions and voluntary subscriptions.  When the town withdrew from the management and support of the school Miss Woodworth ceased to be its teacher and later married and removed from the State.  She never paid anything personally upon the note and never expected to.  The piano was purchased by her for the school.  She turned over all papers connected with the purchase of the piano and all statements of the balance due on the notes to one Parks, the clerk of the school board of the town of Grand Isle.  The town paid nothing on the note and refused to assume any liability on account of the piano transaction.  Cluett & Sons becoming insistent that the piano be paid for, one Homer Griswold, a resident of Grand Isle, offered to take charge of the piano and procured one Adams to advance money for the purpose of "saving it for the school" and Parks turned over to Griswold all papers relating to the piano.  Mr. Adams advanced a part of the balance due on the piano.  The piano continued to be used by the school, which was then being conducted as a private school, until it was discontinued.  Griswold rented the piano two summers and applied the rental on the purchase price.  In January, 1908, the Grand Isle County Grange, which then occupied the school building as a meeting place, through a committee, arranged with Mr. Griswold for the use of the piano until needed by the school on payment of the balance of the amount advanced by Mr. Adams.  In December, 1912, the Grange removed to a new hall and took the piano with them.  While Mr. Griswold was managing the piano he used funds received from school entertainments and from recitals to reduce the note given by Miss Woodworth.  This was done with her knowledge.

When the balance due Cluett & Sons on the note had been reduced to about one hundred dollars one E. J. Parker, also a resident of Grand Isle and a member of the private school committee, interested himself in the piano matter and offered Griswold to pay the balance and save the piano for the school.  Before advancing the money Parker saw Miss Woodworth, asked if she was willing that he should make the payments and save the piano for the school and received the reply that she was willing that anyone should do so.  Thereupon between Nov., 1906 and March, 1908, Parker paid to Griswold for the purpose of discharg-

ing the claim of Cluett & Sons the balance due on the purchase price. To reimburse Parker for the money thus advanced a subscription paper was circulated and forty-three dollars was raised in that manner, of which thirty dollars was contributed by members of the Grange. At the time this suit was brought there remained $59.39 of the sum advanced by Parker that had not been refunded.

The Grange removed the piano to their new hall and continued to use it there with the consent of Parker and the private school committee. In the fall of 1912 the town reestablished a public school in the school building and in March, 1913 the school directors of the town of Grand Isle served notice in writing on defendant McGowan, as master of the Grange, to return the piano to the school building within twelve days. McGowan was then master of said Grange and as such was its presiding officer and had general charge and custody of all the property thereof. Defendant Gordon was the janitor and caretaker of the Grange building and had the custody of the keys. McGowan called the matter of the notice to the attention of the Grange in open meeting and thereupon the Grange voted not to return the piano. Acting under the authority of this vote and under the direction of Parker who claimed an interest in the piano because of the payments advanced by him, the defendants refused to return the piano and retained the same in the Grange hall in the control of the Grange until the service of this writ. The only interest that the defendants ever had or claimed in the piano was because of the fact that they were officials of the Grange. Feb. 24, 1913, Miss Woodworth assigned to the town of Grand Isle her right, title and interest in the piano. Before bringing this suit the town was given a statement of Parker's claimed interest in the piano and was aware that the Grange was holding and using it under a license from Parker. The plaintiff claims title to the piano by virtue of the assignment from Miss Woodworth and the defendants seek to justify under the rights of the Grand Isle County Grange.

Under the contract with Cluett & Sons Miss Woodworth was to receive a bill of sale of the piano upon payment of the sum fixed as rent with interest thereon. Although in form a lease, in law the agreement amounted to a conditional sale. *Nye* v. *Daniels,* 75 Vt. 81, 53 Atl. 150; *The Collender Co.* v. *Marshall,* 57 Vt. 232; *Whitcomb* v. *Woodworth,* 54 Vt. 544.

The defendants rely upon the rights· of the Grand Isle County Grange in justification of their refusal to deliver up the piano. As has been seen the Grange came into possession of the piano under an agreement with Griswold, its caretaker, for its use until wanted by the school. At the time the demand for its return was made the school had been re-opened, so that the time for its return under this agreement had arrived and the Grange had no right thereunder to retain it longer. If the Grange or its officers can justify the retention it is because acting in the right and under direction of Parker.

It is argued that the transaction between Parker and Cluett & Sons amounted to a sale by the latter of their interest in the piano and that Parker was entitled to the possession until the terms of the contract had been complied with. While Parker might have purchased the conditional vendor's interest in the piano and thus have acquired security for his advancement, this claim is not supported by the facts found. Parker advanced the money for the purpose of paying up the claim of Cluett & Sons. No agreement, express or implied, for an assignment of the claim is found and the inference in support of the judgment below is against the contention now made. Nor can the argument that Parker was subrogated to the rights of the conditional vendor be sustained. No agreement of subrogation is found. In the absence of such an agreement it is essential to the right of subrogation that the person making the payment be one who is under some obligation regarding it, or who has some interest to be protected by it. Payment by Parker, even if the remark of Miss Woodworth to him is treated as a request that he pay, would not in the circumstances of this case, entitle him to subrogation in the absence of an understanding to that effect. *Davis et al.* v. *Davis et al.*, 81 Vt. 259, 264, 69 Atl. 876, 130 Am. St. Rep. 1035; *National Bank of Royalton* v. *Cushing et al.*, 53 Vt. 321, 326; Sheldon on Sub. (2nd ed.) §240.

Neither can the claim that Parker succeeded to the rights of Miss Woodworth be sustained. The defendants contend that Parker took her rights in two ways: (1) through Parks and Griswold; (2) from Miss Woodworth herself at the time Parker had the talk with her in which she said she did not care who took up the note. Conceding, as the defendants argue, that Miss Woodworth then had an assignable interest in the piano, the findings do not afford a basis for the claim of an assignment; and
10

here, again, the inference in support of the judgment is against their contention.

Nor does the law of estoppel apply. If the other elements of an estoppel are treated as made out, there is no finding that Parker advanced the money to save the piano for the school expecting to be reimbursed, nor that he was induced to make the payments relying upon an understanding that he would be entitled to hold the piano as security. These facts cannot be inferred from those found to overturn the judgment below.

The defendants argue that the action is barred by the statutes of limitations, as "more than six years had elapsed between the time Miss Woodworth gave up her interest in the piano and the time when she undertook to assign an interest therein to the town." Assuming, but not deciding, that this defence would be available under the general issue, on the facts found the cause of action did not accrue until the demand for the return of the piano made in March, 1913, shortly before this suit was brought.

It remains to consider whether the plaintiff can maintain the action. Its right to the possession of the piano depends upon the assignment from Miss Woodworth. By the terms of this writing she attempted to transfer to the plaintiff, as school property of the town, all her right, title and interest in the piano. The defendants concede that her connection with the piano transaction is that of a trustee; that her trust was to receive money from the school and other sources, pay for the piano and hold it for the benefit of the particular school for which it was bought. They contend that Miss Woodworth abandoned the trust (1) by turning the papers relating to the piano over to Parks, and (2) by her dealings with Parker. The argument is that having abandoned her trusteeship she could not, in the way she did, make the town a trustee. It seems clear that Miss Woodworth assumed the relation of trustee when she entered into the contract with Cluett & Sons. She took possession of the piano under the contract in trust for the school—a trust in its nature public or charitable. 39 Cyc. 32, 70; 2 Pom. Eq. Jur. §987; *Wade* v. *Button,* 72 Vt. 136, 47 Atl. 406.

If it were possible for her to "abandon" the trust, the facts found do not support that contention. While she ceased to be actively interested in raising money to pay for the piano when her employment as teacher of the school ceased, her liability

on the contract was not terminated and so far as appears the relation of trustee continued to the date of the transfer from her to the plaintiff. As conditional vendee she had a transferable interest in the piano. *Hervey* v. *Dimond,* 67 N. H. 342, 39 Atl. 331, 68 Am. St. Rep. 673; *Dame* v. *Hanson & Co.,* 212 Mass. 124, 98 N. E. 589, 40 L. R. A. (N. S.) 873, Ann. Cas. 1913 C. 329; *Heyns* v. *Meyer,* 46 Ind. App. 45, 91 N. E. 973; *Fox* v. *Delaney,* (Ark.) 163 S. W. 157. Upon payment of Cluett & Sons' claim in full the legal title passed to her as trustee. This she subsequently attempted to transfer to the plaintiff.

The defendants say that as Miss Woodworth had abandoned her trust the court of chancery would have to be resorted to. This argument carries the implication that she might transfer her rights if not abandoned. The legal title to the piano, or at least an assignable interest therein, being in Miss Woodworth when she executed the writing of Feb. 24, 1913, the effect of that writing was to transfer such title or interest to the plaintiff in trust for the school. The defendants, or those in whose right they defend, being strangers to the trust cannot be heard to question her right to transfer her interest in the piano. See *Capen's Admr.* v. *Sheldon et al.,* 78 Vt. 39, 47, 61 Atl. 864; *Mitchell et al.* v. *Stevens,* 1 Aikens, 16, 23. Upon acquiring this interest the plaintiff was entitled to the possession of the piano as against the defendants and so could maintain this action.

*Judgment affirmed.*